738 So.2d 1191 (1999)
John G. DAVIS, Plaintiff-Appellant,
v.
WILLIS-KNIGHTON MEDICAL CENTER, Defendant-Appellee.
No. 32,193-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1999.
*1192 Claudius E. Whitmeyer, Shreveport, Counsel for Appellant.
Watson, Blanche, Wilson & Posner by Chris J. LeBlanc, Baton Rouge, Counsel for Appellee.
Before NORRIS, BROWN, WILLIAMS, STEWART and KOSTELKA, JJ.
BROWN, J.
In this medical malpractice action, plaintiff, John G. Davis, appeals a judgment sustaining the peremptory exception of prescription filed by defendant, Willis-Knighton Medical Center, and dismissing his claim with prejudice. Finding error, however, we reverse and remand the matter to the trial court.

Facts
On July 31, 1996, Davis was injured in an automobile accident. Following the accident, he was taken to the emergency room at Louisiana State University Medical Center in Shreveport where he received treatment. Davis was released the next day, but within an hour of his arrival at home, he was taken to Willis-Knighton. Tests performed there indicated that Davis had a ruptured spleen and a splenectomy was performed. During surgery, Davis received six units of packed red blood cells.
On August 6, 1996, Davis was released from Willis-Knighton, but following his return home, he began running fever with temperatures up to 103°F. A series of tests was performed to determine the source of the problem and eventually Davis's doctors discovered that he had developed hepatitis. On September 30, 1996, Dr. Michael Aura gave Davis a letter for his healthcare provider which related Davis's development of hepatitis to the blood transfusions he received while hospitalized at Willis-Knighton. During his deposition, Davis stated that this was the first time he learned that his illness resulted from the blood transfusions.
Davis did not decide to file suit until almost a year later. He consulted an attorney in late September and on September 26, 1997, Davis's counsel mailed a petition to the Patient's Compensation Fund Oversight Board ("PCF") via certified mail requesting the establishment of a medical review panel. On October 3, 1997, the PCF returned the petition to Davis, noting that in accordance with La. R.S. 40:1299.47(A)(2) as amended by Act 664 of the 1997 Regular Session of the Louisiana Legislature, all requests for review of a medical malpractice claim had to be filed with the Division of Administration.[1] *1193 Thereafter, on October 8, 1997, Davis's attorney submitted the petition to the Division of Administration.
In June 1998, Willis-Knighton, disputing the timeliness of Davis's claim, petitioned the district court for a suit number and filed a peremptory exception of prescription which was opposed by Davis. On September 21, 1998, after considering the evidence submitted and arguments made by counsel, and noting that this was "a very bad situation," the trial court sustained the exception of prescription. The trial court noted that it felt bound to follow La. R.S. 40:1299.47 as amended and that under this provision, Davis's claim had prescribed. This appeal ensued.

Discussion
On appeal, Davis asserts that this court should apply the doctrine of contra non valentem to find that his claim has not prescribed. Because we conclude that the provisions of La. R.S. 40:1299.47(A)(2)(a) as amended in 1997 are not applicable to Davis's claim, however, we do not reach this argument.
Medical malpractice claims must be filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of the discovery of the alleged act, omission or neglect; however, in all events, such claims must be filed within three years of the date of the alleged act, omission or neglect. La. R.S. 9:5628.
As noted above, Davis learned on September 30, 1996 that his hepatitis was caused by tainted blood he received during surgery at Willis-Knighton. Therefore, his claim had to be filed by September 30, 1997 to stop or interrupt the running of prescription.
Prior to the enactment of Act No. 664 of 1997, the provisions of La. R.S. 40:1299.47(A)(2)(a) required that a medical malpractice claim against a private health care provider such as Willis-Knighton be filed with the PCF. Act No. 664 of 1997, however amended R.S. 40:1299.47(A)(2)(a) to provide that filing a request for review of a medical malpractice claim with any agency or entity other than the Division of Administration would not suspend or interrupt the running of prescription.
Act No. 664, approved by the governor on July 7, 1997, did not specify an effective date. According to Article 3, § 19 of the Louisiana Constitution of 1974, all laws enacted during a regular session of the legislature shall take effect on August 15th of the calendar year in which the regular session is held, unless the enabling legislation specifies otherwise. Thus, Act No. 664, which was published in the Official Journal of the State on July 18, 1997, became effective on August 15, 1997.
Having established Act No. 664's effective date, the next question we must answer is whether the change made by the Act is to be applied prospectively or retroactively. The Act does not state how it is to be applied, nor is there any other indication of legislative intent regarding application. In addressing the prospective versus retroactive issue, we must determine whether the change is procedural or substantive. A procedural change in the law is one that describes the method for enforcing, administering or determining rights, liabilities or status. La.C.C. art. 6; NAB Natural Resources L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.08/21/96), 679 So.2d 477. Because Act No. 664 modified the place where a claimant is to file a request for review, the modification is obviously procedural, i.e., a change in the method of asserting and/or determining one's rights. As noted by the court in Succession of Fragala, 28,663 (La.App.2d Cir.09/27/96), 680 So.2d 1345, a procedural law is generally applied both retroactively and prospectively. A change in the filing location, however, affects the rights of a claimant to the extent *1194 that a correct filing suspends the running of prescription while an incorrect filing does not. Under the particular facts of this case, the change in filing location had a direct effect on the prescription of Davis's cause of action. Thus, we will examine jurisprudence regarding the interpretation of statutory changes to prescriptive periods.
Statutes of prescription, being remedial in nature, generally apply to all actions instituted after the effective date even though the cause of action accrued before the enactment of the legislation. Lott v. Haley, 370 So.2d 521 (La.1979); Bishop v. Simonton, 615 So.2d 8 (La.App. 2d Cir.), writ denied, 617 So.2d 908 (La. 1993). An exception to this rule of retroactivity for prescriptive statutes includes instances where such application would strip or disturb a party's vested right. Bishop, supra. An injured party's cause of action is a vested property right which is protected by the guarantee of due process. Burmaster v. Gravity Drainage District No. 2 of St. Charles, 366 So.2d 1381 (La.1978); Young v. E.D. Bullard Company, 97-657 (La.App. 5th Cir. 11/25/97), 703 So.2d 783.
The holding and supporting reasoning set forth in Lott, supra, is instructive regarding when the exception to retroactivity is to be applied. In Lott, the plaintiff complained that the retroactive application of a recently enacted statute violated his constitutional rights. Plaintiff Lott's cause of action arose on January 21, 1972 when a doctor failed to diagnose his alleged occupational disease. Plaintiff first learned that he had this disease on April 1, 1976. Thereafter he filed his case on March 21, 1977 under the one-year discovery rule of the medical malpractice act. During the summer of 1975, the legislature had revised the prior law which had an openended time limit during which a plaintiff could file a claim relying upon the discovery rule. The new law stated that all medical malpractice actions had to be filed within three years.
Under the prior law the plaintiff in Lott had timely filed his case, but under the statute as revised his action was untimely. The court held that the effect of the retroactive application of the new statute was to eliminate plaintiff's vested right to sue on his pre-existing cause of action without providing a reasonable period following its enactment to assert his claim. Because the new provision lacked a reasonable period of time for plaintiff to secure his rights under the law that existed when his cause of action arose, the statute could not be retroactively applied without violating his constitutional rights. In reversing the lower courts, the supreme court stated:
[S]tatutes of limitation, like any other procedural or remedial law, cannot consistently with state and federal constitutions apply retroactively to disturb a person of a pre-existing right. Nonetheless, a newly created statute of limitation or one which shortens existing periods of limitation will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights. Moreover, the legislature is the judge of the reasonableness of the time and the courts will not interfere except where the time is so short as to amount to a denial of justice.
Lott, supra at 523 (citations and footnote omitted).
Applying the reasoning of Lott to the instant case, we conclude that the trial court erred in granting Willis-Knighton's exception of prescription. As in Lott, the legislature did not provide a reasonable time frame during which unsuspecting plaintiffs could preserve their vested rights by filing their claims with the Division of Administration rather than the PCF. Had the legislature provided a reasonable grace period for Davis to file his pre-existing claim with the proper agency, we are confident that the time frame would have been greater than the six to eight weeks at issue in this case. Compare Brown v. Reese, 532 So.2d 187 (La.App. 2d Cir.1988) *1195 (where law passed July 1985 had effective date of January 1, 1986, six months was held to be reasonable time for those affected to assert their rights); D'Spain v. D'Spain, 527 So.2d 309 (La.App. 5th Cir. 1988) (six month grace period held reasonable for filing claims under old statute regarding employee's past due wage claim). While six months would have been a reasonable period of time in the instant case, we cannot say that six weeks was.
In so holding, we emphasize that our conclusion is specific to the facts presented in this case and that the result is dependent upon the statutory language and the time frame involved. In the instant case, because the legislature failed to specify a grace period, plaintiff quickly lost his vested rights. Surely such an inequitable result could not have been intended. We find that plaintiff's opportunity to both learn of and act upon the change effected by the legislature's amendment to La. R.S. 40:1299.47 was so limited as to amount to a denial of justice.[2]

Conclusion
For the reasons expressed above, the trial court's judgment is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion. Costs of this appeal are assessed to defendant, Willis-Knighton Medical Center.
KOSTELKA, J., dissents with written reasons.
KOSTELKA, J., dissenting.
As acknowledged by the majority, the amendment to La. R.S. 40:1299.47(A)(2)(a) became effective on August 15, 1997. And, as a prescriptive statute which is remedial in nature, this enactment should apply to all actions instituted after its effective date. I differ from the majority, however, in that I cannot agree that the present situation constitutes an instance where retroactive application of the law would strip a party of a vested right. The majority's reliance on Lott, supra is misplaced.[1] In Lott, the shortening of the prescriptive period for medical malpractice claims completely deprived the plaintiff of his cause of action. Here, Davis was not stripped of any vested right. The legislature merely changed the location at which he should file his claim. This is purely a procedural change. Grace periods, commonly instituted when law acts to deprive an individual of a vested right, are the province of the legislaturenot the appellate courts.
Moreover, Davis does not levy a constitutional challenge against the statute; he claims, instead, that his suit is saved by the application of the doctrine contra non valentem. Particularly, he relies upon the second element regarding "legal cause" preventing the institution of suit. Davis complains that the changes made by Act 664 had only been in effect for a few weeks when he first attempted to file his claim. Despite the fact that the amendment had been published in the Official Journal of the State on July 18, 1997,[2] Davis's attorney relies on the fact that the pocket parts for West's Louisiana Revised Statutes are not distributed until January of the year following a legislative enactment to excuse his ignorance of the law. While factual ignorance may prevent the running of prescription in some circumstances, ignorance of the law does not. La. C.C. art. 5; Lieber v. State, DOTD, 28,745 (La.App.2d Cir.10/30/96), 682 So.2d 1257, writ denied, 97-0087 (La.03/07/97), 689 So.2d 1374.
*1196 Ignorance of the law is not a "legal cause" that would prevent Davis from filing a timely claim with the appropriate agency. Instead, what prevented Davis from filing a timely claim was his delay in attempting to institute an action and the failure of his attorney to make himself cognizant of legislative changes to the medical malpractice act. The legislative enactment requiring all medical malpractice claims to be filed with the Division of Administration and decreeing that a misfiling shall not interrupt or suspend prescription are solemn expressions of legislative will. La. C.C. art. 2. Ignorance, even though veiled in the cloak of equity, does not excuse Davis (or his attorney) from compliance with or spare him the consequences of legislation.
I respectfully dissent.
NOTES
[1] Prior to this amendment, claims were to be filed with the PCF. While we question the diligence of the PCF in notifying Davis's attorney that his claim had not been filed in accordance with the newly amended statute (Davis's claim was sent to the PCF on September 26th and undoubtedly received by them before September 30th), we do not reach the issue of their bad faith in handling Davis's claim based upon our conclusion that the statute as amended is inapplicable to the instant case.
[2] See also Semien v. Pinac, 98-1350 (La.App. 3d Cir.07/07/99), ___ So.2d ___, 1999 WL 455359, in which the Third Circuit found that the amendment changing the location for filing deprived plaintiff of a substantive right to assert her pre-existing claim by not providing a reasonable grace period. The amendment became effective in August 1997. Note that in Semien the claim was filed in November 1997, while in the case sub judice, plaintiff's claim was filed in September 1997.
[1] Likewise, I find the Third Circuit's reliance on Lott in Semien v. Pinac (cited in the majority's second footnote) to be improper.
[2] Regarding publication in the Official Journal of the State, see La. Const. art. 3, § 19; La. R.S. 43:81, 43:87. It should also be noted that legislative enactments are quickly available through research services such as Westlaw and Lexis.