# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-337

**DELBERT W. BUSH, ET AL.**

**VERSUS**

**NATIONAL HEALTH CARE OF LEESVILLE, ET AL.**

*************
APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NUMBER 60270A
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

*************
**SYLVIA R. COOKS**
**JUDGE**
*************

Court composed of Sylvia R. Cooks, Oswald A Decuir, and Marc T. Amy, Judges.

Amy, J., dissents and would grant the exception of prescription.

**AFFIRMED.**

Edwin Dunahoe
Dunahoe Law Firm
402 Second Street
P.O. Box 607
Natchitoches, Louisiana 71458-0607
(318) 352-1999
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Delbert W. Bush, et al.

Kurt S. Blankenship
Robert I. Baudouin
Blue Williams, L.L.P.
3421 North Causeway Blvd., Ninth Floor
Metairie, Louisiana 70002
(504) 830-4938
COUNSEL FOR DEFENDANT/APPELLANT:
    Dr. Celeste Aida Lujan-Baez

**COOKS, J.**

## STATEMENT OF THE CASE

This is a medical malpractice action. Delbert and Della Bush, individually and on behalf of their then minor child, Daniel Wayne Bush, sued Dr. Celeste Lujan-Baez and Byrd Regional Hospital in Leesville, Louisiana, alleging Dr. Lujan-Baez and Byrd Regional Hospital failed to timely diagnose and treat their son's torsioned testicle and as a result he lost a testicle. On July 25, 2000, prior to trial, Byrd Regional Hospital was dismissed on a motion for summary judgment. Dr. Lujan-Baez also filed a motion for summary judgment on the issue of liability. The trial court denied Dr. Lujan-Baez's motion. This court and the supreme court denied writs. Following a bench trial, the trial judge found Dr. Lujan-Baez failed to provide the appropriate standard of care to Daniel and awarded damages in the amount of $50,000.00. Dr. Lujan-Baez filed this appeal asserting the claim against Dr. Lujan-Baez has prescribed and the trial court erred in finding liability on the part of the doctor. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

On July 8, 1996, Daniel Bush was working with his brother on a painting job. At about 3:30 in the afternoon, he began experiencing abdominal pain. At 5:00 p.m., he was taken by his father to the emergency room at Byrd Regional Hospital in Leesville. Dr. Celeste Lujan-Baez was the emergency room physician on duty at the time. Following an examination, Dr. Lujan-Baez diagnosed a possible testicular torsion. Nikki Anderson, the admitting nurse, testified it was also her initial impression that Daniel had a testicular torsion. Dr. Lujan-Baez ordered an ultrasound, a CBC and a urinalysis. Byrd Regional had no ultrasound technician on duty and the testimony indicated it took about thirty minutes to locate one. The

2

ultrasound initially indicated some blood flow to the testicle, but the evidence indicated Daniel was in so much pain, the ultrasound results were not necessarily conclusive. Dr. Lujan-Baez called in Dr. Ghanta, a general surgeon, for a consult. Dr. Ghanta stated, although the ultrasound appeared normal, due to the severe abdominal pain, it was his impression Daniel may have a testicular torsion. He also testified reliance on the ultrasound results was misplaced because the ultrasound report indicated Daniel was unable to remain still during the testing. The decision was finally made at 7:30 p.m to transfer Daniel to St. Francis Cabrini in Alexandria. He arrived at St. Francis Cabrini at 8:20 p.m. and surgery was initiated at 9:35 p.m., but it was too late to save Daniel's testicle.

## LAW AND DISCUSSION

*Liability*

We find there is substantial medical evidence to support the trial court's decision finding Dr. Lujan-Baez failed to provide the appropriate standard of care to young Daniel and as a result he lost a testicle. The acts of malpractice took place in Byrd Regional Hospital in Leesville. This parochial facility, as are many in rural Louisiana, is typically underfunded and understaffed. Byrd Regional had no ultrasound technician on duty and no urologist on staff. Dr. Lujan-Baez, the ER physician on duty, was trained as an OB-GYN, but failed to pass the OB-GYN boards. She was hired by Coastal Emergency Services, which company contracted with Byrd Regional to provide personnel for its emergency room. Dr. Lujan-Baez testified Coastal Emergency did not require its physicians to have any experience in emergency room medicine. Additionally, the only surgical experience she had was in the field of OB-GYN. Dr. Lujan-Baez attempted to justify her decision to delay the transfer of young Daniel by arguing a transferee hospital, such as St. Francis

3

Cabrini in Alexandria, is under stricter mandates and will not accept a patient unless certain diagnostic tests are performed at the local hospital prior to transfer. She was well aware of the fact that she had only a window of three to four hours from the onset of pain to save the testicle. However, Byrd Regional lacked the facility or personnel to provide these diagnostic tests in a *timely manner*. Moreover, Dr. Lujan-Baez was acutely aware of the limitations of the Leesville facility when she made the decision to delay transferring to the Alexandria hospital, admittedly equipped and staffed to test and provide emergency care during the short window of medical opportunity which Dr. Lujan-Baez candidly acknowledged was fast expiring. Although she ordered an ultrasound, because Byrd Regional did not have a technician on duty, the testimony indicates it took thirty minutes to locate one. She also called in Dr. Ghanta, a general surgeon, for a consult, knowing Dr. Ghanta could not operate on Daniel even if he concurred in her diagnosis. Dr. Lujan-Baez testified her initial impression was of a testicular torsion, and from that point to her release of Daniel for transfer to Alexandria, her opinion never changed. The medical testimony supports the conclusion that Dr. Lujan-Baez did not act quickly enough to get Daniel the help he needed to save his testicle. We affirm the decision of the trial court on liability and damages.

*Prescription*

Prior to trial, Dr. Lujan-Baez filed an exception of prescription which was denied by the trial court. The trial court found "the filing of the suit against Dr. Baez and the hospital within one year of the injury interrupted prescription. Since plaintiff timely filed his petition against Dr. Baez after the Medical Review Panel's decision, the claim is not prescribed." Dr. Lujan-Baez re-urges the exception of prescription on appeal. The sequence of events giving rise to the prescription issue is as follows:

4

(1) July 8, 1996 was the date of the treatment.
(2) On July 8, 1997 suit was filed in district court against Dr. Lujan-Baez and Byrd Regional.
(3) On September 23, 1997, more than one year after the date of treatment, plaintiff requested a medical review panel.
(4) On April 21, 1999, the plaintiff voluntarily dismissed suit against Dr. Lujan-Baez. Byrd Hospital remained a defendant.
(5) On January 10, 2000, the medical review panel found Dr. Lujan-Baez met the applicable standard of care in her treatment of plaintiff.
(6) On February 24, 2000, plaintiff re-filed against Dr. Lujan-Baez in district court.
(7) On August 7, 2000, Dr. Lujan-Baez filed an exception of prescription. The trial court denied the exception.
(8) On May 22, 2001, Byrd Regional filed a motion for summary judgment on the issue of liability.
(9) On July 25, 2001, a judgment was signed dismissing Byrd Regional from the suit. The plaintiff did not appeal this judgment.
(10) On August 17, 2004, a bench trial was held against Dr. Lujan-Baez. The trial court found in favor of plaintiff and awarded $50,000.00 in damages.

Dr. Lujan-Baez contends since Byrd Regional was dismissed from the suit, she is no longer a solidary obligor with Byrd Regional, and suit filed in district court did not interrupt prescription as to her. *See Williams v. Northgate Hospital* 98-1477 (La. App. 3 Cir. 5/5/99), 734 So.2d 1251, *writ denied,* 99-1588 (La. 9/17/99), 747 So.2d 565. Additionally, Dr. Lujan-Baez contends suit against her in district court does not interrupt prescription under the holding of *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226. She contends a plaintiff must file with the medical review panel within the one year period, and since plaintiff's request for a medical review panel was not filed until September 23, 1997, more than one year after the date of treatment, prescription has run on the claim.

At the time the Bush's claim arose, *Hernandez v. Lafayette Bone & Joint Clinic*, 467 So.2d 113 (La.App. 3 Cir. 1985) represented settled jurisprudence in this circuit that suit filed in district court against a covered medical provider, standing alone in solido, was sufficient to interrupt prescription. If the district court suit was dismissed on an exception of prematurity for failure to first appear before a medical

review panel, a plaintiff had one year from the date of notification of the panel decision to re-file in district court.

The *Hernandez* court read La. Civil Code article 3463 (interruption of prescription) and La.R.S. 40:1299.42 (A)(2)(a) (suspension of prescription) together and held the plaintiff had one year from the date of notification of the panel decision to re-file against the doctor. However, in order to take advantage of interruption, a plaintiff must first file in district court. If the plaintiff failed to first file in district court, prescription was not interrupted since La.R.S. 40:1299.42 (A)(2)(a) deals only with suspension. For example, in *Valerie v. Foret*, 544 So.2d 737 (La.App. 3 Cir. 1989), the alleged malpractice occurred on March 7, 1985. Plaintiff did not file suit, but requested a medical review panel within one year on January 14, 1986. The medical review panel notified the plaintiff of a decision on November 9, 1986. The plaintiff filed suit within one year of the panel decision on March 16, 1987. This court held the filing for a medical review panel only *suspends* prescription, citing *Hernandez*. Since prescription was never *interrupted* by the filing of a suit in district court, the suspension lasted for only 90 days after notification of the panel decision. In other words, plaintiff should have filed suit in district court by February 9, 1987. This court held the claim was prescribed. In *Tullier v. St. Francis Cabrini Hospital,* 96-738 (La. App. 3 Cir. 2/5/97), 689 So.2d 529, *writ denied*, 97-1233 (La. 9/5/97), 700 So.2d 508, this court held the plaintiff's claim prescribed, finding the plaintiff waited two years from the date of the voluntary dismissal of their first suit to re-file in district court and four years from the date of the alleged malpractice to file with the proper agency for a medical review panel.

In the present case, the Bush's attorney filed suit in district court within the one year prescription period and filed for a medical review panel shortly thereafter. While

the Bush's claim was under consideration before the medical review panel, the Bush's attorney voluntarily dismissed Dr. Lujan-Baez from the district court suit. Suit was re-filed against Dr. Lujan-Baez within 90 days of the panel decision. It is undisputed the Bush attorney's handling of this case was within the mandates of the law as it existed at the time under *Hernandez* and *Valerie.* However, in 1998, *during the pendency of the Bush claim*, the supreme court overruled *Hernandez* in *LeBreton,* 714 So.2d 1227. In *LeBreton,* the supreme court held La. Civil Code article 3463 was not applicable to medical malpractice actions. The court found there is no provision for the interruption of prescription in medical malpractice actions, only suspension. The plaintiff must file for a medical review panel within one year of the date of the alleged malpractice. A suspension of prescription occurs when a plaintiff files for a medical review panel under La.R.S. 40:1299.42 (A)(2)(a) and this suspension continues for 90 days following notification of the panel decision.

The facts in *LeBreton* are as follows. The plaintiff filed suit in district court and with the medical review panel within one year from the date of the alleged acts of malpractice. The district court suit was dismissed based on prematurity and the plaintiff waited five months after notification of the review panel decision to file a second suit. The plaintiffs relied on *Hernandez,* which gave them one additional year following notification of the panel decision. The supreme court overruled *Hernandez* and held the filing of a premature suit in district court does not interrupt prescription. The court stated:

> In the present case, by virtue of the legislative enactment calling for the necessity of a medical review panel prior to submission of the case to the district court, *the legislature by special provision for the inclusion of suspension excluded the applicability of interruption of prescription.* (Emphasis added.)

The court held filing for a medical review panel only *suspends* the time within

which suit must be instituted in district court.  More particularly, it held:

> Simply stated, the filing of a medical malpractice claim with a medical review panel triggered the suspension of prescription specially provided by the Medical Malpractice Act, rather than the interruption of the liberative prescriptive period generally provided in the Civil Code.
>
> . . .
>
> Accordingly, we find that the holding of *Hernandez v. Lafayette Bone & Joint Clinic*, 467 So.2d 113 (La.App. 3 Cir. 1985) is not supportable, since it does not take into consideration the special rules formulated specifically for medical malpractice claims and is, therefore, overruled.  Having so found, we further determine that the lower court in the present case erred as a matter of law in finding that plaintiff's prematurely filed law suit could be simultaneously utilized with the special medical malpractice legislation to defeat the defendants' peremptory exception of prescription.

*Id.* at 1230.

> The supreme court noted its decision in *LeBreton*
>
> [S]erves the judicial system by eliminating an advantage which *Hernandez* granted to those litigants who failed to follow the proper procedural sequence in medical malpractice litigation.  As applied by Hernandez, those litigants who did not first submit their claim to a medical malpractice review panel as provided in La.R.S. 40:1299.47(B)(1)(a)(I) before filing suit in district court benefitted from their error by receiving an additional year after suspension had run within which to file their suit.  Under our ruling herein, this anachronistic benefit no longer exists.

*Id.* at 1231.

Justice Calogero issued a strong dissent arguing the general codal provisions providing for interruption of prescription should be read together with the specific provisions in the MMA dealing with suspension.  If the plaintiff is indeed benefitted by gaining an additional year, "it is within the exclusive province of the Legislature to correct any such undesired 'loophole' that might result from the courts' concurrent application of two unambiguous and non-conflicting statutory provisions."

In subsequent supreme court cases regarding this issue, Justice Calogero continues to dissent. *See Washington v. Fustok*, 01-1601 (La. 9/21/01), 797 So.2d 56

in which Justice Calogero dissented, stating:

> The purpose of denying claims that are prescribed is to avoid denying the defendant a timely opportunity to investigate a matter and prepare a defense. That purpose is not served here, where the defendant was sued less than one year from the occurrence of plaintiff's injury.

*See also Martin v. Comm-Care Corporation d/b/a Community Care Center of Ruston*, 03-3188 (La. 2/6/04), 866 So.2d 225, in which Justice Calogero again dissented from a writ denial, stating: "I continue to believe that the majority resolution of this prescription issue in *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226, was wrong and that application of the faulty analysis in *LeBreton* serves in this case to cause a near-unconscionable result denying the rights of the survivors of the deceased asserted-victim of malpractice."

While *LeBreton* attempted to clarify the law with regard to *qualified* health care providers under the MMA, when one party is not a qualified health care provider, the plaintiff's attorney must still file in district court to interrupt prescription as to that party. Often, the plaintiff is not aware that the party is not a qualified health care provider until notified by the Patient Compensation Fund medical review board. Prior to *LeBreton*, a plaintiff always filed against all parties in district court. Judge Tobias, in a concurrence in *Farve v. Jarrott*, 04-1424 (La.App. 4 Cir. 10/13/04), 886 So.2d 594, noted *LeBreton* made substantive as well as procedural changes. He stated:

> The rationale of *Sherman* and *LeBreton* is that a party asserting a claim of malpractice must assume that the allegedly malpracticing health care provider is a qualified health care provider under La.R.S. 40:1299.41 et seq. (hereinafter, "the Act"). Before LeBreton, a person had a right to assume that his or her health care provider was not necessarily covered by the Act and could file a suit in the district court that would interrupt prescription. Thereafter, if the health care provider was determined to be a qualified health care provider, the district court suit would be deemed premature and had to be dismissed. The effect of *LeBreton* was to change the presumption, which has substantive as well as procedural aspects.

9

*Id*. at 598, Judge Tobias concurring.

If a plaintiff assumes all parties are qualified health care providers and files only with the PCF medical review panel, it may be too late to then file in district court. The plaintiff must then rely on the solidary obligor theory to defeat an exception of prescription. This issue arose in *Williams*, 734 So.2d 1251, where this court (on remand from the supreme court) found the claim against Northgate Hospital had prescribed when the timely-filed doctor was dismissed on a motion for summary judgment.

In the present case, since the timely filed suit against Byrd Regional was dismissed on a motion for summary judgment, the plaintiff cannot rely on that suit to defeat the exception of prescription, as held in *Williams*. However, in this case, we find the retroactive application of *LeBreton* to suits filed before July 8, 1998 (the date *LeBreton* was decided) is patently unfair to the parties who are denied recovery of damages for a legitimate claim and to attorneys who relied on prior jurisprudence, some from our circuit, which allowed them to interrupt prescription by filing suit in district court. Surely, a legal malpractice insurer would argue the attorney was not negligent for timely filing in the district court because according to the prevailing jurisprudence at the time as articulated in *Hernandez*, prescription would have been interrupted. Also unlike the facts in *LeBreton*, the plaintiff re-filed timely, in fact, within 90 days of notification of the panel decision. Applying *LeBreton* to the facts in this case denies Daniel of his vested claim for damages. We are not bound to apply *LeBreton* retroactively in this case. Other circuits have declined to apply procedural changes in the law retroactively. For example, in *Davis v. Willis-Knighton Medical Center,* 32,193 (La.App. 2 Cir. 8/18/99), 738 So.2d 1191, the Second Circuit held that an amendment to La.R.S. 40:1299.47(A)(2)(a) which provided that prescription

would not be interrupted if the request for a medical review panel was filed with the wrong entity, did not apply retroactively to bar the plaintiff's claim. In *Davis*, the date of the alleged malpractice arose on September 30, 1996. At the time his claim arose a request for a medical review panel had to be filed with the PCF. On September 26, 1997, the plaintiff mailed a petition to the PCF. However, effective on August 15, 1997, the La.R.S. 40:1299.47(A)(2)(a) was amended to provide filing a request for review of a medical malpractice claim with any agency or entity other than the Division of Administration would not suspend or interrupt prescription. On October 3, 1997, the PCF returned the petition to the plaintiff. Thereafter on October 8, 1997, the plaintiff's attorney submitted the petition to the Division of Administration. In June 1998, Willis-Knighton filed an exception of prescription which was granted by the trial court. The Second Circuit reversed, stating:

> Because Act No. 664 modified the place where a claimant is to file a request for review, the modification is obviously procedural, i.e., a change in the method of asserting and/or determining one's rights. . . [A] procedural law is generally applied both retroactively and prospectively. *A change in the filing location, however, affects the rights of a claimant to the extent that a correct filing suspends the running of prescription while an incorrect filing does not.* Under the particular facts of this case, the change in filing location had a direct effect on the prescription of Davis's cause of action. Thus, we will examine jurisprudence regarding the interpretation of statutory changes to prescriptive periods.
> Statutes of prescription, being remedial in nature, generally apply to all actions instituted after the effective date even though the cause of action accrued before the enactment of the legislation. . . . An exception to this rule of retroactivity for prescriptive statutes includes instances where such application would strip or disturb a party's vested right. . . An injured party's cause of action is a vested property right which is protected by the guarantee of due process.

*Id.* at 1193-94.

The *Davis* court cited the supreme court case of *Lott v. Haley*, 370 So.2d 521 (La. 1979). In *Lott*, the plaintiff's cause of action arose on January 21, 1972 when a physician failed to diagnose his occupational disease. The plaintiff first learned of the

11

disease on April 1, 1976, suit was filed on March 21, 1977 within one year of discovery. At the time there was no three year preemption on medical malpractice actions. During the summer of 1975, the legislature revised the prior law. The new law stated all malpractice actions must be filed within three years. The supreme court found the retroactive application of the new law would divest the plaintiff of a vested right to sue on his pre-existing cause of action. The *Lott* court stated:

> [S]tatutes of limitation, like any other procedural or remedial law, cannot consistently with state and federal constitutions apply retroactively to disturb a person of a pre-existing right.

*Id.* at 523.

In *Davis,* the plaintiff's claim arose under the old statute. However, the plaintiff did have the opportunity to file in the correct venue had he known of the change in the law. In the present case, there was no opportunity for the Bush's to file in the proper venue, since the claim arose in 1996, suit was filed in 1997 and *LeBreton* was decided in 1998.

This court in *Semien v. Pinac*, 98-1350 (La.App. 3 Cir. 7/7/99), 745 So.2d 632, held the filing with the PCF interrupted prescription although the proper place for filing a claim under the statute was with the Division of Administration. This court also cited the supreme court case of *Lott v. Haley*.

More recently, in *Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission*, 04-0473 (La. 4/1/05), 903 So.2d 1071, our State Supreme Court also declined to apply a decision affecting sales taxes retroactively. In that case, the supreme court was called upon to interpret La.Civ.Code art. 466 and its definition of a component part of an immovable. Willis-Knighton sued for a refund of sales and use tax paid under protest. Willis-Knighton claimed medical equipment, specifically nuclear cameras, had been immobilized and were incorporated into the structure of its

buildings and were component parts of immovables and therefore not taxable under the city and parish ordinances. The district court found Willis-Knighton's nuclear cameras are "other installations" and thus component parts within the meaning of La.Civ.Code art. 466, are permanently attached to the hospital building and as a result, are immovable property under Louisiana law. The district court ruled Willis-Knighton was entitled to a refund of all local sales and use taxes paid on maintenance and repairs to the nuclear cameras. The court of appeal reversed the district court decision. The supreme court accepted writs and affirmed. The court held Willis-Knighton's nuclear cameras are not component parts of its hospital buildings and thus are not immovables within the contemplation of the Civil Code articles governing immovable property and thus not exempt from taxation. On rehearing, however, the supreme court held its decision in *Willis-Knighton* was to be given prospective application only. *Because court and individuals relied on prior jurisprudence to the contrary and there was no indication that the prior jurisprudence would be overruled*, the court reasoned the decision should be given prospective application only. Specifically, the court stated:

> [W]e conclude that our opinion in this matter should be given prospective effect only. While that opinion does not change the substantive law but rather simply applies the law as it has existed since the 1978 Civil Code Revisions, we note that Louisiana appellate courts have employed a disjunctive reading of LSA-C.C. art. 466, and in so doing, have drawn on the societal expectations test as a measure for determining what items might be considered component parts under the first paragraph of Article 466. *Because the courts, and no doubt individuals, have relied on this approach, and there was no clear indication . . . that foreshadowed its demise, we find that this case is one which is appropriate for prospective application.* We are bolstered in our conclusion in this regard by the fact that the area of law with which we are concerned - that of property law - is one in which predictability and stability are especially important.

This young boy's claim for damages, which arose and was filed prior to *LeBreton*, is a vested substantive right which should not be disturbed. The supreme

13

court in *LeBreton* was justified in clarifying an area of the law to prevent certain perceived evils which may have resulted from the failure of certain litigants to diligently pursue their claims. This intent is not harmed by applying *LeBreton* to only those cases arising after July 8, 1998, the date of the decision. To do otherwise, would strip this boy, and others similarly situated, of legitimate claims for damages through no fault of their own or lack of diligence, but solely because this court and others unwittingly misinterpreted the law and our supreme court, for whatever reason equally as legitimate, did not correct the error for nearly thirteen years.

## DECREE

Based on the foregoing review of the record, the decision of the trial court is affirmed.

**AFFIRMED.**