# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 06-1440

**IN RE:  MARION ELLIOTT**

**************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT
PARISH OF CONCORDIA, DOCKET NO. 41050
HONORABLE CATHY JOHNSON, DISTRICT JUDGE

**************

ON REMAND FROM THE
LOUISIANA SUPREME COURT,
DOCKET NO. 2007-CC-0236

**************

**SYLVIA R. COOKS
JUDGE**
**************

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and J. David Painter Judges.

**AFFIRMED.**

**J. Rodney Messina
David Alva Woolridge
Law Offices of J. Rodney Messina
A Professional Law Corporation
256 East Boulevard
Baton Rouge, Louisiana 70802
(225) 343-9422
COUNSEL FOR PLAINTIFF:
        Marion Elliott**


**Marc W. Judice
H.L. Tuten, III
Judice & Adley
A Professional Law Corporation
P.O. Drawer 51769
Lafayette, Louisiana 70505-1769
(337) 235-2405
COUNSEL FOR DEFENDANT:
        Gary Haygood, D.D.S. d/b/a Miss-Lou Family Dental Center**

**COOKS, Judge.**

## STATEMENT OF THE CASE

This is a medical malpractice case. The sole issue before us is whether the Plaintiff's malpractice complaint and request for a medical review panel was filed within one year of the date of injury to suspend the running of prescription in accordance with La.R.S. 40:1299.47(A)(2)(a). The trial court denied the Defendant's exception of prescription and this court denied writs finding no error in the decision of the trial court. The Louisiana Supreme Court granted the writ and remanded the case for briefing, argument and a full opinion. For the reasons assigned below, we affirm the decision of the trial court denying the Defendant's exception of prescription.

## STATEMENT OF THE FACTS

Dr. Gary Haygood, a dentist, performed electrosurgery on Marion Elliott. A few days later, Ms. Elliott began experiencing pain, sweating and problems with her eyesight and sought treatment at the Riverland Hospital Emergency Room in Ferriday. On May 20, 2004, after consultation with a lawyer, Ms. Elliott retrieved her dental records from Dr. Haygood's office.

On February 7, 2005, counsel for Ms. Elliott sent a letter addressed as follows:

Patient Compensation Fund
Dental Review
Attention: Ms. Cheryl Jackson
626 N. 4th Street, Room #101
Baton Rouge, Louisiana 70802

The letter inquired as to whether Dr. Haygood was a qualified health care provider under the Medical Malpractice Act. The North 4th Street address was an old address which previously had been shared by the Louisiana Division of Administration (DOA) and the Patients Compensation Fund (PCF). Both offices had changed location prior to the arrival of this correspondence. The Post Office,

however, rerouted the letter for delivery to the PCF's new address. Cheryl Jackson, the PCF medical malpractice compliance director, acknowledged receipt of the letter of February 7, 2005 and testified her office responded via facsimile, that same day, advising counsel that Dr. Haygood was a qualified health care provider and was insured by Medical Protective.

On February 21, 2005, counsel for Ms. Elliott filed a formal complaint against Dr. Haygood again addressed to the PCF, *attention Cheryl Jackson*, at the North 4th Street address. Enclosed with the filing was a check in the amount of $100.00, made payable to the PCF, which represented "payment for the convening of the medical review panel."

It is undisputed the formal complaint and check were received and processed by the PCF because two days later, the PCF deposited the $100.00 check in an account designated for that purpose and entered the deposit into the computer. However, Ms. Jackson took no steps to convene a medical review panel, return the complaint to counsel as improperly filed, or notify him that the complaint was not officially received.

Having received no response from the PCF, on May 11, 2005, counsel for Ms. Elliott, sent another letter addressed "Attention: Ms. Cheryl Jackson" and enclosed a copy of the original complaint. The May 11, 2005 letter was mailed to the Patients Compensation Fund, but the physical address for postal delivery of the letter was different from the North 4th Street address. This letter was addressed to 105 3rd Street and it is reproduced below as follows:

Patient's Compensation Fund
Dental Review
Attention: Ms. Cheryl Jackson
105 3rd Street
Baton Rouge, Louisiana 70802

1

Dear Ms. Jackson,

Pursuant to our telephone conversation this morning enclosed you will find a copy of the letter that was forwarded to your office on February 21, 2005. As you can see in the letter we have requested a medical review panel be convened.

This will also confirm that your office has received said check 8850 in the amount of $100 which confirms that our complaint was received by your office within the time frame as set forth in our February 21st, 2005 letter. As of this correspondence we have not received a response to said letter and would ask that you please notify us of the status of our complaint.

Again Ms. Elliott's counsel stated that he received no response from the PCF and Ms. Jackson did not forward the May 11th correspondence to the Division of Administration. On May 23, 2005, in a chance meeting, counsel for Ms. Elliott saw Ms. Jackson in a court proceeding related to another matter and inquired as to the status of Ms. Elliotts's case. According to counsel, after he expressed to Ms. Jackson that he "[hadn't] received anything ... from [her]," she said "well, I don't know... I'll look into it and find out."

On May 23, 2005, counsel for Ms. Elliott forwarded the formal complaint and request for a medical review panel against Dr. Haygood directly to the Division of Administration addressed as follows:

Louisiana Division of Administration
Attention: Ms. Dianna Schiank
P.O. Box 44336
Baton Rouge, Louisiana 70804-4336.

The complaint and request were received by the DOA on May 24, 2005.

Counsel for Ms. Elliott then sent a letter to Ms. Jackson on May 31, 2005, and inquired as follows:

Dear Ms. Jackson,

On May 11, 2005, we forwarded a letter to you as it concerns the filing of a Medical Malpractice Suit against Gary S. Haywood, D.D.S. I also saw you in court on Monday, May 23, 2005 and spoke to you about this

2

matter. As of this letter we have not spoken to you since we last spoke on Monday, May 23, 2005.

Please contact my office as soon as possible so we can discuss the issue of why this Filing in February was never filed or forwarded back to our office even though the check was filed by your office.

On June 6, 2005, Ms. Jackson finally responded regarding the February 21, 2005 formal complaint and request for a medical review panel. The letter from Ms. Jackson recites:

RE: Gary Haygood

Upon review of the paperwork received in this office relative to Dr. Haygood we have researched the paper trail and the following applies:

Your letter dated February 7, 2005 was received by this office on February 10, 2005. The address on this letter is an old address and the building was blown up (3) years ago and is currently being rebuilt. This correspondence was a request for enrollment information on behalf of Dr. Haygood and Miss-Lou Family Dental Center and was processed [by] the Records Manager. Requesting enrollment information does not fall under any statutory requirement.

Your letter dated February 21, 2005 along with your check was received by this office on February 24, 2005. The address is also the same incorrect address. The check was stamped and deposited because that is part of our procedure and all checks must be deposited within a two day time frame unless there are unusual circumstances that occur.

According to Joyce, Panel Supervisor, the check was deposited, and the letter was attached to a copy of the check, once it had been logged on to the computer/check log. She also stated that she made a courtesy phone call to your office stating that we had received the check however, the complaint must be filed with the DOA and she gave the information relative to filing. She was told at that time that they would be resubmitting the filing to the DOA. The check was held in anticipation of the complaint being filed with the DOA in accordance with the statute.

I received a phone call from Robin in your office May 11, 2005 wanting to know why we had not Acknowledged receipt of the filing. She told me that the check was attached and at that point I called Joyce in to get a copy of the check since after looking on the check log I saw where it had been posted. When Joyce brought a copy of the check the paperwork was attached and at this point, I told Robin to resubmit the filing to the DOA and that I would hold the check until the complaint was received.

The next time I was made aware of the complaint was when I saw you

3

May 23, 2005 at court and you were concerned about not having received any notice from this office and I told you that I would go back and check my records and call you personally. I called on three different occasions and left a message for you to return my call.

Upon checking our records it appeared that complaint you filed prior to this one was sent to correct address and there was no problem. For some reason your request on this case was sent to an address that has not been applicable to this agency for at least (3) years.

I trust this explains the series of events that led to this complaint not being processed at the time of filing.
Effective May 23, 2005 a refund was issued relative to the filing fee.

Responding to this letter on June 20, 2005, counsel for Ms. Elliott disputed Ms. Jackson's account of what transpired following receipt of the complaint by her office. He stated his office had no record reflecting receipt of the "courtesy phone call" mentioned. Counsel noted it was "very strange" that his office had received a prompt response to his February 7th letter, but no response to the February 21st letter until June 6, 2005, after several requests for a report on the status of the filing. He also related in the letter: "If a courtesy phone call by someone in your office by the name of Joyce was made to our office my office is not aware of said call. Furthermore, Joyce could not give me the date she called or the person she spoke to at my office on that date."

At the hearing on the exception, Ms. Jackson's testimony regarding the courtesy call and conversations she had with counsel's office was somewhat equivocal and differed from the historical accounting she related to Plaintiff's counsel in her June 6th letter. When pressed by counsel, Ms. Jackson, who expressed in her June 6, 2005 letter that she had in fact talked to Robin concerning the status of the filing and told her "to resubmit the filing to the DOA," could not remember exactly when that conversation actually occurred. She testified: "I talked to Robin on some occasions in reference to whether we had received the check, things of that nature, so, yes, I have spoken with Robin in your office." When asked by counsel "as regards to the February

4

21st letter," whether she talked to Robin, she stated: "I'm not sure as to which one." When Ms. Jackson was pressed by the court to confirm whether she was testifying that the alleged " courtesy call was made to Ms. Elliott's attorney's office on May the 11th, 2005" she responded: "I'm not sure of the exact date because there was conversation between Mr. Messina's office and my office during that period of time." Ms. Jackson acknowledged she had not talked to the attorney directly about the need to file the complaint with the DOA, although she said she left several messages for him to call her after May 23rd, when by happenstance the two saw each other in the courthouse.

On June 9, 2005, counsel for Ms. Elliott received a refund check from the PCF in the amount of $100.00 marked "Filing Fee Refund For Marion Elliott ."

On June 21, 2005, the PCF, acting through Ms. Jackson, served notice of the malpractice claim to Dr. Larry Haygood instead of Dr. Gary Haygood. Ms. Jackson then advised counsel for Ms. Elliott of the mistake. On June 23, 2005, four months after the original complaint was filed and the check was processed by the PCF, Dr. Gary Haygood was properly notified.

On January 13, 2006, Dr. Haygood filed a peremptory exception of prescription. Following a hearing, the trial court denied the exception, stating:

> This Court specifically distinguishes the general rule of law enunciated in **La. Revised Statute 40:1299.47(A)(2)(b)** in that it is the opinion of this Court that this statute is applicable to those instances where there is a singular filing by a claimant as opposed to the present situation which involves multiple correspondence, communication, filings, and deposits and holding of claimant's check for a period of approximately three (3) months. This Court further takes judicial notice that **DOA** and **PCF** work hand in hand and are in fact intimately involved. After the pattern of conduct observed by this Court with regard to the office of PCF, this Court cannot and will not allow a claimant to lose its day in Court as a result of said conduct which had the effect of lulling **Elliott's** counsel into believing that the claim had been properly filed. The present claimant must be allowed to at least have the merits of her case heard in a Court of competent jurisdiction after having attempted to pursue the correct course for such an extended period of time and with multiple filings and extensive correspondence with **PCF.**

As a result of the conduct of **PCF** and by extension, **DOA** (as both are subdivisions of the State of Louisiana), **PCF, DOA** and the State of Louisiana, and anyone acting pursuant to the authority granted to them (in this case **HAYGOOD**), must be estopped from pursuing a course of conduct and then attempting to penalize a possibly injured party attempting to assert a claim therefor from so doing.

We have examined the record and we are satisfied Mrs. Jackson did not satisfy her statutory obligation, as an agent for the PCF and State of Louisiana, to process the complaint she received in accordance with the legislative directive found in La.R.S. 40:1299.47(A)(3). Her failure to do so interrupted the scheme envisioned by the legislature for handling such complaints in the event they are filed improperly.

**LAW AND DISCUSSION**

The prescriptive period for a medical malpractice claim is contained in La.R.S. 9:5628(A), which provides all claims must be filed in the district court within one year from the date of the alleged act, omission or neglect or one year from the date of discovery. Prior to filing in district court, a claim against a qualified health care provider (public or private) must first be submitted for review before a medical review panel. "The filing of the request for review shall suspend the time within which suit must be instituted." La.R.S. 40:1299.47(A)(2)(a); *See also* La.R.S. 40:1299.39(A)(2)(a). In order to initiate suspension, all claims must be filed with the DOA.

Louisiana Revised Statutes 40:1299.47(A)(2)(a) provides, in relevant part:

Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.

Louisiana Revised Statutes 40:1299.47(A)(2)(b) provides, in relevant part:

The request for review of a malpractice claim under this Section shall be deemed filed on the date of receipt of the request stamped and certified

6

by the division of administration or on the date of mailing of the request if mailed to the division of administration by certified or registered mail only upon timely compliance with the provisions of Subparagraph (1)(c) or (d) of this Subsection. Upon receipt of any request, the division of administration shall forward a copy of the request to the board within five days of receipt.

Although the Division of Administration is the proper place for filing a claim against a private health care provider, notably, the statute does not impose a duty upon the DOA to notify the plaintiff that the complaint was received.[1] Instead, this duty is imposed upon the PCF.

Louisiana Revised Statutes 40:1299.47(A)(3)(emphasis added) provides, in relevant part:

It shall be the duty of the board within fifteen days of the receipt of the claim by the board to:

(a) *Confirm to the claimant by certified mail, return receipt requested, that the filing has been officially received and whether or not the named defendant or defendants have qualified under this Part.*

(b) In the confirmation to the claimant pursuant to Subparagraph (a) of this Paragraph, notify the claimant of the amount of the filing fee due and the time frame within which such fee is due to the board, and that upon failure to comply with the provisions of Subparagraph (1)(c) or(d) of this Subsection, the request for review of malpractice claim is invalid and without effect and that the request shall no suspend the time within which suit must be instituted in Subparagraph (2)(a) of this Subsection.

In the case of a private health care provider, the statute creates a two-tiered system of filing involving both the DOA and the PCF. While the DOA accepts the filing, it is the PCF which provides the notice to the claimant that a claim has been "officially received," accepts and deposits the fee and processes the claim. The notice requirement under this provision is crucial and triggers certain deadlines for the payment of fees and the appointment of an attorney chairman. Upon notice, a

---

[1] The DOA must provide notice to the claimant of receipt of the claim within thirty days only if the health care provider is the state, its agencies or a public health care provider. La.R.S. 40:1299.39.1(A)(3).

"claimant shall have forty-five days from the mailing date of the confirmation of receipt of the request for review . . . to pay to the board a filing fee in the amount of one hundred dollars per named defendant qualified under this Part." La.R.S. 40:1299.47(A)(1)(c); *see also* La.R.S.40:1299.47(A)(2)(c). "All funds generated by such filing fees shall be private monies and shall be applied to the costs of the Patient's Compensation Fund Oversight Board incurred in the administration of claims." La.R.S. 40:1299.47(A)(1)(f) [2]

The statutory responsibility imposed upon the PCF are "mandatory duties of a *clerical or ministerial* nature" and are meant "to facilitate the medical review panel process" and ensure the fair handling of all claims. *Bosarge v. Louisiana Patient's Compensation Fund*, 06-1354 (La.App. 1 Cir. 5/4/07), 960 So.2d 1063, 1067 (emphasis in original); *see also Berthelot v. Patients Compensation Fund Oversight Board,* 07-0112 (La.App. 1 Cir. 11/2/07), __So.2d __. [3] By mandating the proper procedure to be followed, the statute seeks to remove any discretion in the handling of the complaints by state employees and thereby remove any potential inequity in the system which would result if state employees were left to decide which claimants

---

[2] By statute, the funds held by the PCF are not public monies, but rather are designated as private monies held in trust for the benefit of claimants and health care providers. La.R.S. 40:1299.44. Although technically the PCF acts as trustee for both claimants and health care providers, it is undisputed the PCF has a financial stake in the outcome of the litigation.

[3] Because the duties of the PCF are ministerial, the decisions are not subject to judicial review as are decisions made by administrative agencies. Lately, the PCF has been admonished by the court for exceeding its authority and making legal/adjudicative decisions. *See Berthelot v.Patient's Compensation Fund Oversight Board*, 97-0112 (La.App. 1 Cir. 11/2/07), __So.2d __, where the court held the "PCF has overstepped its legislative authority and has not carried out its mandatory clerical and ministerial duties that are clearly set forth in the LMMA;" *see also Estate of Nicks v. Patient's Compensation Fund Oversight Board,* 05-1624 (La.App. 1 Cir. 6/21/06), 939 So.2d 391 and *Bosarge v. Louisiana Patient's Compensation Fund*, 06-1354 (La.App. 1 Cir. 5/4/07), 960 So.2d 1063. In *Davis v. Willis-Knighton Med, Ctr.*, 32, 193 (La.App. 2 Cir. 8/18/99), 738 So.2d 1191, *writ denied*, 99-2712 (La. 12/10/99), 751 So.2d 254, the PCF did not process plaintiff's claim, deciding on its own, that it was not in accord with a newly enacted provision. The court declined to "reach the issue of their bad faith in handling Davis's claim based upon our conclusion that the statute as amended is inapplicable to the instant case." *Id.* at 1193.

receive notice of improper filings and which do not.[4]

It is clear from the testimony presented in this case by Ms. Jackson the PCF has no policies or procedures for the consistent handling of claims received by it. At one point, it was the procedure of the PCF to return an improperly filed complaint to the plaintiff. The PCF obtained an opinion by the State Attorney General as to whether this method was appropriate. The Attorney General responded: "This office sees nothing improper in the procedure described. The Board is simply acting in good faith as an improperly served party by notifying the claimant of the situation." Atty. Gen. Op. No. 97-493. In the present case, had the PCF returned the complaint, as it had done in the past, or followed the statutory mandate and sent notice within fifteen days that the claim was not "officially received," the claimant would have had three months to re-file with the DOA.[5] However, Ms. Jackson testified the PCF has changed its policy with regard to improperly filed complaints. Now, the custom of the PCF is to make a "courtesy call" to the claimant's attorney. Ms. Jackson testified:

_____

[4] The DOA and the PCF stand by analogy as the clerk of court of the judicial district. The clerk of court, under the supervision and control of the judiciary, is the "legal custodian of all of its records and is responsible for their safekeeping and preservation." La.Civ.Code art. 251. The failure of the clerk to perform any ministerial duty subjects him to contempt of court as well as tort liability. La.Civ.Code art. 256; *Mills v. Ganucheau*, 416 So.2d 361 (La.App. 4 Cir. 1982). Likewise, the PCF is subject to suit for mandamus for failure to perform mandatory, ministerial duties. *In Re: Medical Review Panel of Pierson*, 02-1598 (La.App. 1 Cir. 5/9/03), 845 So.2d 1275, *writ denied*, 03-1559 (La. 10/10/03), 855 So.2d 324. And, we note, other state agencies have been held responsible in tort for failure to perform non-discretionary statutory duties. *See Gregor v. Argenot Great Cas. Ins. Co.*, 02-1138 (La. 5/20/03), 851 So.2d 959. The PCF is not before us as a party, and therefore, we are not called upon to made a determination regarding any potential liability for damages for the failure to follow statutory mandates or it own designated procedures in the handling of this claim.

[5] A review of the jurisprudence indicates the PCF has used different methods for handling complaints received by it which are intended for the DOA. *See Holmes v. Lee*, 35,021 (La.App. 2 Cir. 9/28/01), 795 So.2d 1235; *Davis v. Willis-Knighton Medical Center*, 32, 193 (La.App. 2 Cir. 8/18/99), 738 So.2d 1191; and *Berthelot v.Patient's Compensation Fund Oversight Board*, 97-0112 (La.App. 1 Cir. 11/2/07), __So.2d __. In the present case, Ms. Jackson's testimony is inconsistent with regard to the letter of May 11, 2005. At one point, she testified if the physical address is correct for the DOA, then the claim should have been processed even if the complaint is received by the PCF. Later in the testimony she contradicted that assertion, stating the PCF will not process a claim unless it goes through the DOA.

"When we get a letter that is sent to the wrong, filed incorrectly, normally we will give a courtesy call to the party who filed it and let them know that you have filed incorrectly." Although the PCF will sometimes make a courtesy call, Ms. Jackson testified that the PCF is under no statutory obligation to do anything with an improperly filed complaint. She stated Ms. Elliott's complaint, although received by the PCF, "didn't mean anything. We could have torn that piece of paper up for what it was worth because it was filed incorrectly. All claims have to be filed with the Division." She testified further:

> When we get something that is filed incorrectly, it is basically out of courtesy because there is nothing in our office rules wise or statutory wise that says, you need to sent this back, you need to tear it up. It doesn't say anything. So what we do as a courtesy, we will make a phone call.
>
> . . . .
>
> Q: Okay. When you receive those nothing happens? You just throw them in the dead file?
> A: We make a phone call.
> Q: And that is it?
> A: Yeah. We don't have to do anything. But we do make a phone call.

Ms. Jackson testified she was "not sure" what happened to Ms. Elliott's complaint and request for a medical review panel, but she did deposit the $100.00 check into the State Treasury and entered the deposit into the computer. Ms. Jackson testified:

> Q: And according to your memorandum, or, excuse me, memo to me it says that the check was stapled to the complaint. How did the check get deposited?
> A: That's the process we are under. Procedures and mandates, accounting proceedings, and things of that nature that mandate that when we get a check in our office we have two days. It must be deposited within two days.
> Q: And that check was deposited?
> A: To show – It was at some point the check is separated from the filing document. They aren't housed together. And a copy of the check is put with the document that is filed.
> Q: Okay. So this was deposited somewhere around February the 24th of

'05, it was deposited in State of Louisiana Department of Treasury Bank One? Is that the bank that ya'll normally use.
A: Yes.

Even after depositing the check, Ms. Jackson did not notify Ms. Elliott's attorney that the complaint was not officially filed. Ms. Jackson explained the claimant's "check was held because there was a conversation between the claims manager and Robin in Mr. Messina's office. She said she was going to file it through the Division. So rather than refund it and then have it followed again she said, Okay, send it in to the Division and then we'll apply the filing fee." Ms. Jackson produced no documentation at the hearing to support that this alleged conversation took place; and her recollection of events was based entirely on third party verbal communication without any paper confirmation. The check was held by the PCF from February until June 2005. By taking custody of the filing fee, Ms. Jackson lead counsel to believe the claim was properly filed and all fees due had been paid. It was reasonable for counsel to assume his next critical deadline would involve the appointment of an attorney chairman.

The clear language of Louisiana Revised Statutes 40:1299.47(A)(3)(a) directs the PCF to "[c]onfirm to the claimant by certified mail, return receipt requested, that the filing has been officially received." The purpose of this requirement is twofold: (1) to facilitate proof of receipt; and, (2) to notify the claimant that the filing has been *accepted by the PCF for processing*. The responsibility to provide notice to the claimant is not placed on the Division of Administration who serves merely as a "conduit" for the initial filing of the complaint in cases involving private practitioners. The legislature placed this obligation on the PCF, the State agent ultimately charged with processing the complaint and convening the medical review panel. When the PCF receives a complaint that has not been properly filed first with

11

the Division of Administration, the statute requires it to alert the claimant, in writing by certified mail, that the complaint has not been "officially" accepted by it for processing. The PCF "is granted no authority in the law to issue a 'declaration' stopping the process," except implicitly to the extent the statute authorizes it to notifying the claimant that the filing has not been "officially" received. *Golden v. Patient's Compensation Fund*, 40, 801 (La. App. 2 Cir. 3/8/06), 924 So. 2d 459, *writ denied*, 06-837 (La. 6/2/06), 929 So.2d 1261. *Munden v. State, Div. of Admin.*, 01-2326 (La. App. 1 Cir. 5/9/03), 849 So. 2d 639, *writ denied*, 03-1532 (La. 10/3/03), 855 So.2d 310. Allowing it to do otherwise undermines the very purpose underlying the notice requirement found in La.R.S. 40:1299.47(A)(3) and allows the PCF to "pick and choose" who to advise and what claimants deserve "courtesy notices" to prevent dismissal of their claims purely because of an innocent filing error. The PCF, in this regard, stands in the same position as the clerks of court serving throughout this State whom have been charged by the legislature with the affirmative duty to receive and process pleadings by aggrieved parties seeking judicial relief. The jurisprudence holds, without much dispute, that the clerks of court are not at liberty to hold a petition for three months before returning it to the sender or notifying a litigant that the pleadings have not been officially accepted and filed. The law favors, and due process demands, that whenever practical an aggrieved parties' day in court should be safeguarded by the state. *Sibley v. Sibley* 97-1912 (La. App. 1 Cir. 12/28/98), 724 So. 2d 275, *writ denied*, 99-0291, 739 So. 2d 792. The *two-tiered filing* scheme devised by the State in malpractice cases involving private practitioners did not eliminate this due process requirement. To accomplish this end, the State placed a mandate on its agent (responsible for processing the claim) to provide notice to the claimant by confirming in writing the "official receipt" of the claim. This

mandate inherently requires the PCF to confirm in writing when the claim is not "officially received"

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court denying the exception of prescription. All costs of this appeal are assessed against Gary S. Haygood, D.D.S.

**AFFIRMED.**