764 So.2d 81 (1999)
Steven COLEMAN and Glenda Coleman, Plaintiffs-Appellants,
v.
ACROMED CORPORATION and Arthur D. Steffee, M.D., Defendants.
No. 32,590-CA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1999.
As Amended January 26, 2000.
Writ Denied March 31, 2000.
*82 Randy J. Ungar & Associates, Inc. by Randy J. Ungar, George W. Byrne, Jr., David P. Gontar, Loretta G. Cieutat, New Orleans, Counsel for Appellants.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, Counsel for Defendant/Appellee, Doctors' Hospital of Shreveport, Inc.
Pettiete, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P. by Joseph S. Woodley, Shreveport, Counsel for Warren D. Long, M.D.
Before WILLIAMS, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from the trial court's granting of a peremptory exception of prescription filed by Defendants, Dr. Warren D. Long and Doctors' Hospital of Shreveport, Incorporated ("Hospital"), dismissing the claims of Plaintiffs, Stephen and Glenda Coleman, against the Hospital and Dr. Long. For the reasons stated herein, we reverse.

FACTS AND PROCEDURAL HISTORY
Plaintiff Stephen Coleman underwent separate cervical and lumbar surgeries at the Hospital on June 25, 1991, and June 17, 1992, respectively. The surgeries were performed by Dr. Long. On May 25, 1995, prior to the filing of the original petition against Acromed Corporation ("Acromed") and Dr. Arthur D. Steffee, Plaintiffs filed an "amended complaint"[1] with the Louisiana Patients' Compensation Fund requesting a medical review panel to review the conduct of the Hospital and Dr. Long in relation to Mr. Coleman's surgeries. On June 12, 1995, Plaintiffs filed suit against Acromed and Dr. Steffee in the nature of a products liability suit. Specifically, Plaintiffs alleged they suffered harm as the *83 result of negligence on the part of Acromed for improper manufacture of surgical implements and on the part of Dr. Steffee in designing and marketing the implements which were placed in Mr. Coleman's body during the two surgeries.[2]
The medical review panel rendered an opinion favorable to the Hospital and Dr. Long on September 17, 1997. Thereafter, on June 8, 1998, Plaintiffs filed an amended and supplemental petition naming the Hospital and Dr. Long as defendants in the original suit. The Hospital filed a peremptory exception of prescription alleging Plaintiffs' claim had prescribed after 90 days from receipt by Plaintiffs of the medical review panel opinion, or no later than December 19, 1997, as provided in La. R.S. 40:1299.47(A)(2)(a), which reads as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until 90 days following notification, by certified mail, ... to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part.... (Emphasis ours.)[3]
The trial court granted the exception and dismissed Plaintiffs' suit as to the Hospital and Dr. Long.

DISCUSSION
Plaintiffs contend that the trial court committed legal error in finding that their suit against Acromed and Dr. Steffee did not interrupt prescription as to their action against the Hospital and Dr. Long and in dismissing their suit as prescribed under the application of La. R.S. 40:1299.47. Plaintiffs argue that a timely-filed suit pending against one solidary obligor continues the interruption of prescription as to all purported solidary obligors, citing White v. West Carroll Hospital, Inc., 613 So.2d 150 (La.1992); Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La. 1986); and Billiot v. American Hospital Supply Corporation, 721 F.2d 512 (5th Cir.1983). In matters involving a question of law, we review the record de novo. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-C-0690 (La.7/5/94), 640 So.2d 237; Conagra Poultry Co. v. Collingsworth, 30,155 (La.App.2d Cir.1/21/98), 705 So.2d 1280.
In general, the burden of proving that a suit has prescribed rests with the party pleading prescription. Wilkes v. Carroll, 30,066 (La.App.2d Cir.12/10/97), 704 So.2d 938; Burdeaux v. Cline, 626 So.2d 1205 (La.App. 2d Cir.1993); Bishop v. Simonton, 615 So.2d 8 (La.App. 2d Cir. 1993), writ denied, 617 So.2d 908 (La. 1993). In those instances, however, when the plaintiff's petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension or interruption of the prescriptive period. Lima v. Schmidt, 595 So.2d 624 (La.1992); Wilkes, supra; Bishop, supra.
The prescriptive period applicable to medical malpractice actions is governed by La. R.S. 9:5628, which states that such actions must be filed within one year from *84 the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect. In any event, even as to claims filed within one year from the date of such discovery, such claims must be filed, at the latest, within a period of three years from the date of the alleged act, omission or neglect. La. R.S. 9:5628; Masters v. Fields, 27,924 (La.App.2d Cir.1/24/96), 666 So.2d 1333.
The rules governing the suspension of prescription set forth in La. R.S. 40:1299.47 are only applicable to entities defined as health care providers. Health care providers are defined by La. R.S. 40:1299.41(1):
"Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of La. R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any nonprofit facility.... (Emphasis ours.)
In Rogers v. Synthes, Ltd., 626 So.2d 775 (La.App. 2d Cir.1993), this court found that a suit against a hospital, a health care provider, which acted as the professional vendor of a prosthesis surgically implanted at the hospital, was an action in medical malpractice covered by the Medical Malpractice Act, thus requiring initial submission of the claim to a medical review panel. Suit was originally filed in general tort and products liability theories against the hospital and manufacturer. Only that portion of the action against the hospital, a health care provider, was deemed to fall within the confines of the Louisiana Medical Malpractice Act.
A case which we find to be more on point with the case sub judice, especially concerning the characteristics of the defendants, is Billiot, supra. In that case, the plaintiff, who had undergone breast augmentation, timely filed suit against the manufacturer of the implants used claiming that the implants were defective. The plaintiff did not file suit against the physician who had surgically inserted the implants, however, until more than three years after the initial surgery. The court found that plaintiffs suit against the manufacturer interrupted prescription against the physician because he was a solidary obligor with the manufacturer. We agree with the court's reasoning.[4]
We find on this record that neither Acromed nor Dr. Steffee, as the designer of the implements, are health care providers as defined in La. R.S. 40:1299.41; and, therefore, suit against them is not subject to the formalities of the Louisiana Medical Malpractice Act requiring, as a prerequisite to filing suit, the institution of a medical review panel and receipt of the resulting opinion. Since neither Acromed nor Dr. Steffee are within the statutory definition of a health care provider, the suit filed against them by Plaintiffs was timely and operates as a valid interruption of prescription as to them and any other entity which may be a solidary tortfeasor. See La. C.C. art. 1799; Billiot, supra.
We must next determine, therefore, whether there is a solidary relationship *85 between Acromed, Dr. Steffee and the subsequently named Defendants, the Hospital and Dr. Long. It is the coextensiveness of an obligation for the same debt, and not the actual source of the liability, which determines the solidarity of an obligation. (Emphasis ours.) La. C.C. art. 1797; Stonecipher v. Mitchell, 26,575 (La. App.2d Cir.5/10/95), 655 So.2d 1381. In the case sub judice, there is a cause of action which Plaintiffs have asserted that arises from the manufacture of a product and, separately, the use of that product. The damage to Plaintiffs under those specific allegations, however, is the same and recovery for those damages may be sought from any or all of the Defendants.[5]
In summary, we find that Acromed, Dr. Steffee, the Hospital and Dr. Long may each be held liable for the whole of Plaintiffs' damages. We further find, therefore, that Acromed and Dr. Steffee are solidary obligors with the Hospital and Dr. Long. Consequently, the suit filed by Plaintiffs on June 12, 1995, against Acromed and Dr. Steffee interrupted prescription as to those named Defendants and the Hospital and Dr. Long; and, therefore, it was legal error for the trial court to find that Plaintiffs' claims against the Hospital and Dr. Long had prescribed.

DECREE
For the foregoing reasons, the judgment of the trial court dismissing the suit of Plaintiffs, Stephen and Glenda Coleman, is hereby reversed. All costs of this appeal are assessed to the Defendants, Doctors' Hospital of Shreveport, Incorporated, and Dr. Warren D. Long.
REVERSED.
Before WILLIAMS, STEWART, GASKINS, PEATROSS and DREW, JJ.
PER CURIAM.
In an amicus curiae brief filed herein after rendition of our opinion, Dr. Warren D. Long, through his attorneys, points out that our opinion erroneously included him in out findings. We agree. Dr. Long had been previously dismissed from this suit by judgment of the trial court and no party has taken an appeal from that judgment in his favor. We, therefore, amend our original opinion to exclude any reference to Dr. Long, including the assessment of any costs to him.
NOTES
[1] Plaintiffs and Defendants refer to the document as an "amended complaint." Upon a thorough examination of the record, however, we are unable to find an original complaint.
[2] Metal plates were attached to Mr. Coleman's spine with Pedicle screws to stabilize the spine in the areas where Dr. Long performed surgical procedures. There was much debate during the time of both of Mr. Coleman's surgeries concerning the quality of Pedicle screws. They have since been determined to be defective as they are prone to eventually back out or break altogether.
[3] A careful reading of La. R.S. 40:1299.47(A)(2)(a) reveals that Defendant has misstated when prescription would lapse in the case sub judice. It is the suspension of prescription that is lifted following the running of 90 days after the mailing of notice of a decision by the medical review panel. This does not mean that if prescription was suspended with 23 days to go, as here, that those 23 days would not be able to run once the suspension of prescription had been lifted. The actual date that prescription would have run in the case sub judice, therefore, is January 8, 1998, as opposed to December 19, 1997.
[4] We distinguish LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, on which Defendants heavily rely. In LeBreton, supra, the plaintiff filed a suit in medical malpractice prior to filing a claim with the Louisiana Patients Compensation Fund to request a medical review panel. We agree that, under those circumstances, the premature filing of a medical malpractice suit does not serve to interrupt prescription by the very nature of its prematurity. The case sub judice is distinguished from LeBreton, supra, because the initial suit filed here by Plaintiffs was in products liability, which was valid, timely and not premature, making it a viable interruption of prescription.
[5] In exploring the solidary relationship of tortfeasors where damage arises from separate theories of recovery, as in the case subjudice, we find the case of Egros v. Pempton, 606 So.2d 780 (La.1992), to be supportive. Egros, supra, involves a suit against an uninsured motorist carrier in contract and a tortfeasor in negligence. Although the sources of the causes of action are very different, the underlying obligation is coextensive because each is obligated to repair the resulting damages. The fact that the actual amounts underlying the liability may be different is of no consequence. Ballam v. Seibels Bruce Insurance Company, 97-1444 (La.App. 4th Cir.4/1/98), 712 So.2d 543.

Another example of a solidary relationship involving separate theories of recovery is Wilson v. City of Shreveport, 28,846 (La.App.2d Cir.11/1/96), 682 So.2d 882, in which an employer and a third-party tortfeasor were found to be solidary obligors to a police officer injured in an automobile accident; and, thus, the officer's timely filing of suit against the third-party tortfeasor interrupted prescription as to his worker's compensation claim later filed against the city. La. C.C. arts. 1799; 3462; 3503.