# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 06-352 consolidated with 06-353

**MINOS BOREL, SR. ET AL.**

**VERSUS**

**DR. CLINTON YOUNG AND
LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY**

**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE,
DOCKET NO. 2002-1665-G c/w 2005-1393-D
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

*************
**SYLVIA R. COOKS
JUDGE**
**************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

P. Chris Christofferson, APLC
1104 N. Dupre Street
New Orleans, Louisiana 70119
(504) 324-3419
COUNSEL FOR PLAINTIFFS/APPELLANTS:
 Minos Borel, Sr., et al.

Marc W. Judice
H.L. Tuten, III
Judice & Adley
926 Coolidge Blvd.
P.O. Box 51769
Lafayette, Louisiana 70505-1769
COUNSEL FOR DEFENDANTS/APPELLEES:
 Dr. Clinton Young and
 Louisiana Medical Mutual Insurance Company

**COOKS, Judge.**

## STATEMENT OF THE CASE

This is a medical malpractice case. Minos Borel and his children appeal the judgment of the trial court dismissing their claim for damages for the death of Mary Borel on an Exception of Prescription. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

In April 1999, an ultrasound revealed Mary Borel, age 65, had a mass in her left lower abdomen. Her internist, Dr. Clinton Young, referred Mrs. Borel to Dr. Aldy Castor, an OB/GYN for surgical evaluation. Dr. Castor recommended surgery. On August 18, 1999, Mrs. Borel was admitted to Lafayette General Medical Center (LGMC) for surgery. On August 19, 1999, Dr. Castor performed a left ovarian cystectomy and appendectomy. Mrs. Borel tolerated the procedure well.

On the morning after surgery, Mrs. Borel was awake, alert and her vital signs were stable. However, her temperature was 99 degrees and she complained of dizziness. By that afternoon, Mrs. Borel was coughing and complaining of shortness of breath. By 5:30 p.m., her oxygen saturation dropped, her pulse was elevated and her fever spiked to 103.8 degrees. She was moved to ICU, intubated and placed on a ventilator.

Mrs. Borel was diagnosed with congestive heart failure of unknown cause. On August 21, 1999, Dr. Castor and Dr. Kinchen performed an exploratory laparotomy for possible pelvic abscess. Mrs. Borel was placed on an antibiotic medication and Dr. Gary Guidry was consulted for pulmonary management. Mrs. Borel developed multi-organ failure and was taken back to surgery on August 25, 1999. She remained on antibiotic therapy but continued to have difficulty oxygenating and remained

2

unresponsive. By October 15, 1999, Mrs. Borel was transferred to St. Brendan's Long Term Care Facility. Mrs. Borel remained at St. Brendan's until her death on May 23, 2000.

On August 14, 2000, Plaintiffs filed a malpractice claim with the Patient Compensation Fund (PCF) against Dr. Clinton Young, Dr. Aldy Castor, and Lafayette General Medical Center (LGMC). On January 17, 2002, the medical review panel rendered an opinion finding no breach in the standard of care rendered to Mrs. Borel by Dr. Young, Dr. Castor or LGMC. The record indicates the Plaintiffs received the opinion on January 22, 2002.

On March 28, 2002, the Plaintiffs filed suit in district court against LGMC. The Plaintiffs' petition did not name Dr. Young or Dr. Castor. On April 24, 2002, LGMC answered the Plaintiffs' petition asserting "the comparative negligence and/or fault of third parties not made defendants" in the case. Two years later, pursuant to discovery, in January 2004, Plaintiffs learned Dr. James Falterman would testify as an expert witness on behalf of LGMC. The deposition of Dr. Falterman was taken on February 17, 2005. Plaintiffs contend they "discovered" for the first time during the deposition that Dr. Falterman would testify Drs. Young and Castor fell below the standard of care in their treatment of Mary Borel. Plaintiffs assert prior to this date, they had no reasonable cause to believe there was negligence by Dr. Young or Dr. Castor from any source qualified to testify on the standard of care required of an internist or an OB/GYN.

Plaintiffs attempted to amend the original petition to name Dr. Young and his insurer, Louisiana Medical Mutual Insurance Company (LAMMICO). When their efforts failed, on March 15, 2005, the Plaintiffs filed a separate district court suit for malpractice against Dr. Young and LAMMICO, under Docket No. 2005-1393-D.

This suit was consolidated with the pending suit against LGMC.

Dr. Young and LAMMICO filed an Exception of Prescription. The trial court granted the exception finding Plaintiffs' suit, filed in district court on March 15, 2005, more than three years from the date of the alleged malpractice, was barred under La.R.S. 9:5628(A), which provides, "even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect." The trial court reasoned this provision is peremptive in nature and not subject to interruption or suspension and concluded "[n]o action may be brought once three years have passed after the alleged act of malpractice under any circumstances, even (as the statute clearly states) if discovery of the alleged act, omission or neglect occurs during the third year." Therefore, the trial court found suit against Dr. Young, filed in district court more than three years after the alleged malpractice, was barred by peremption. We affirm the decision of the trial court but for different reasons.

## LAW AND DISCUSSION

*La.R.S. 9:5628 - Prescription or Peremption*

The prescriptive period for medical malpractice is provided in La.R.S. 9:5628, which provides in relevant part:

> A. No action for damages for injury or death against any physician . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, or omission, or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

This statute provides two prescriptive periods within which to institute a medical malpractice action, namely one year from the date of the alleged act or one year from the date of discovery but not longer than three years from the date of the

4

alleged act, omission or neglect. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502. The trial court interpreted these two time periods as follows:

> La.R.S. 9:5628(A) means that in an action against a physician under the medical malpractice act, the plaintiff has one year from the alleged act, omission or neglect or one year from discovery of the alleged act, omission or neglect within which to bring an action. This one year period is, presumably, subject to all of the normal rules applied to suspension and interruption of prescription found elsewhere in the law.

> But the second period of time that must be applied to all actions under the medical malpractice act is "peremptive" in nature and may not be interrupted or suspended. No action may be brought once three years have passed after the alleged act of malpractice under any circumstances, even (as the statute clearly states) if discovery of the alleged act, omission or neglect occurs during the third year. *Pena v. Williams, M.D.*, 03-0982 (La.App. 4 Cir. 2/4/04), 867 So.2d 801.[1]

Although the result reached by the trial court is correct, the supreme court has held La.R.S. 9:5628 is prescriptive in nature, not peremptive, and there are specific provisions in the Medical Malpractice Act(MMA) which govern the suspension and interruption of the prescriptive period. *See Hebert v. Doctors Memorial*, 486 So.2d 717 (La.1986) [2]

---

[1] In *Pena,* 867 So.2d 801, the appellate court held La.R.S. 9:5628 is a peremptive statute and "[a]ccordingly, nothing may interfere with the running of a preemptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as *contra non valentem* are not applicable." Although, the result in *Pena* is correct, the language on peremption may create confusion for medical malpractice litigants and does not appear to be in keeping with the medical malpractice statute or supreme court directives. In practice, a suit in district court may be filed against a health care provider more than three years from the date of the alleged malpractice if, prior to that time, a timely medical review panel request is filed and prescription is suspended. See La.R.S. 40:1299.47(B)(1)(a)(I); La.R.S. 40:1299.41(G); La.R.S. 40:1299.47(A)(2)(a); *Hebert v. Doctors Memorial*, 486 So.2d 717 (La. 1986); and *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226.

[2] In *Hebert*, 486 So.2d 717, the supreme court explained:
"Initially, . . . [La.R.S. 9:5628] coincides with La.Civ.Code art. 3492's basic one year prescriptive period for delictual actions, coupled with the 'discovery' exception of our jurisprudential doctrine of contra non valentem ('within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect'). A separate and independent feature, or provision, of § 9:5628 is contained in the following clause: provided, however, that even as to claims filed within one year from the date of discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
. . . .
[W]e conclude that La.Rev.Stat. § 9:5628 is in both of its features noted above prescription statute, *with only the single qualification that the discovery rule is expressly made inapplicable after three*

*LeBreton and La.Civ.Code art. 2324(C).*

In deciding this case, the trial court looked only to the date of the alleged malpractice (May 23, 2000) and the date the district court suit was filed against Dr. Young (March 15, 2005) and concluded the suit was preempted under the statute. However, during the five-year interim, the Plaintiffs filed a timely request for a medical review panel against Dr. Young and LGMC, thus satisfying the requirements of La.R.S. 40:1299.47(B)(1)(a)(i)[3], and then Plaintiffs filed a timely district court suit against LGMC, an alleged joint tortfeasor. The issue presented for our review is whether the timely district court suit, filed within ninety days after a medical review panel decision against LGMC interrupts prescription as to Dr. Young, an alleged joint tortfeasor who was named in the suit more than ninety days after receipt of the review panel's decision finding his conduct did not fall below the standard of care.

The Defendants do not dispute a medical review panel request against Dr. Young and LGMC was timely filed, which suspended the running of prescription. La.R.S.40:1299.41(G); La.R.S. 40:1299.47(A)(2)(a); *LeBreton v. Rabito,* 97-2221 (La. 7/8/98), 714 So.2d 1226. However, the Defendants assert this suspension ended ninety days following receipt of the panel decision or the remainder of the initial prescriptive period applicable to Dr. Young.[4] Thereafter, defendants maintain prescription against Dr. Young began to run again, and Plaintiffs had until January 29, 2003 to file suit against Dr. Young, but failed to do so.

---

*years from the act, omission or neglect." Id.* at 723-24. (emphasis added). *See also, Campo v. Correa,* 01-2707, (La. 6/21/02), 828 So.2d 502.

[3] La.R.S. 40:1299.47(B)(1)(a)(i) provides: "No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."

[4] *Guitreau v. Kucharchuk, M.D.,* 99-2570 (La. 5/16/00), 763 So.2d 575, held when the statutory ninety-day period of suspension is complete, a plaintiff is entitled to the remainder of the one year prescriptive period that was unused at the time of the request for a medical review panel.

Plaintiffs assert they complied with the dictates of the medical malpractice statute when a request for a medical review panel was timely filed against Dr. Young and LGMC. Thereafter, Plaintiffs contend the district court suit filed against LGMC on March 28, 2002 interrupted prescription as to Dr. Young because Dr. Young and LGMC are joint tortfeasors. Plaintiffs rely on La.Code Civ.P. art. 2324(C)[5]. Plaintiffs also cite *White v. West Carroll Hospital*, 613 So.2d 150 (La.1992), and *Younger v. Marshall Industries*, 618 So.2d 866 (La. 1993), two cases decided before *LeBreton.* They assert *LeBreton* is inapplicable because *LeBreton* dealt with the effect of filing a *premature* suit in district court, while, in this case, suit in district court was *timely* filed against LGMC, a joint tortfeasor. It is true, as Plaintiffs assert, that *LeBreton* was not called to decide the precise issue in this case. Nevertheless, we find *LeBreton's* application is broader than Plaintiffs contend and the holding in that case controls our decision in the present.

As Plaintiffs assert, *LeBreton* addressed the effect of filing a district court suit prior to satisfying the requirements of the statute mandating that a plaintiff first submit a medical malpractice claim to a medical review panel. Prior to *LeBreton,* a plaintiff could interrupt prescription by filing suit in the district court against the health care provider within the one year statutory period. The defendant health care provider customarily responded by filing an exception of prematurity seeking dismissal of the suit because of plaintiff's failure to first file a request for a medical review panel. Under the general codal provisions, as interpreted by *Hernandez v. Lafayette Bone & Joint Clinic,* 467 So.2d 113 (La.App. 3 Cir. 1985), prescription would begin anew after the rendition of the panel decision, thereby allowing the plaintiff an additional year within which to file suit in district court. The *LeBreton* court concluded allowing

---

[5] Louisiana Civil Code Article 2324(C) provides: "Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."

7

*Hernandez* to stand "will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew." *LeBreton*, 714 So.2d at 1230. *LeBreton* sought to remedy this "perceived evil[]"[6] by declaring that the general provisions on interruption of prescription, found in La.Civ.Code art. 3462, should not be applied simultaneously with the specific provisions regarding prescription found in La.R.S. 40:1299.47(A)(2)(a) of the medical malpractice statute.[7] The supreme court stated:

> Rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.

*LeBreton,* 714 So.2d at 1229.

The supreme court held the special provisions on prescription contained in the medical malpractice statute trump the general codal provisions on prescription. The supreme court concluded, as follows:

> [B]y virtue of the legislative enactment calling for the necessity of a medical review panel prior to submission of the case to the district court, the legislature by special provision for the inclusion of suspension excluded the applicability of interruption of prescription. . . .

---

[6] *Bush v. National Health Care of Leesville, et al.*, 05-337, p. 14 (La.App. 3 Cir. 11/2/05), 923 So.2d 150, 158, *rev'd*, 05-2477 (La. 10/17/06), 939 So.2d 1216.

[7] In a footnote, the supreme court noted: "As regards the non-qualified health care provider and cases not involving medical malpractice, La.Civ. Code art. 3462, the general provision, provides for interruption of prescription." *LeBreton,* 714 So.2d at 1231. That situation arose in *Coleman v. Acromed Corp.*, 32,590 (La.App. 2 Cir. 12/15/99), 764 So.2d 81, where the Second Circuit found La.Civ.Code art. 3462 interrupted prescription as to a non-qualified health care provider when the claim was based in products liability. Finding *LeBreton* inapplicable, the Second Circuit allowed the plaintiff to bring a qualified health care provider into the timely-filed district court suit well beyond ninety days.

Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that *there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.*

*Id.* at 1231.(emphasis added).

We find *LeBreton* clearly overruled the prior jurisprudence which applied the general provisions on interruption of prescription to a medical malpractice case and held the more specific provision found in the MMA controls the time in which suit must be filed against health care providers covered by the Act.[8]

*Applicable Provisions of the Medical Malpractice Act*

Louisiana Revised Statutes 40:1299.41provides, in relevant part:

D. A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part.
. . . .
G. Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).

Louisiana Revised Statutes 40:1299.47(A)(2)(a) provides, in relevant part:

The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, a provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of health care

---

[8] The wisdom of *LeBreton* is now evident, although initially, it created some untoward results in medical malpractice cases for unsuspecting litigants, which cases, because of the length of time it takes to come through the judicial system, are now just reaching the appellate courts. *See Bush v. National Health Care of Leesville, et al.*, 05-337, (La.App. 3 Cir. 11/2/03), 923 So.2d 150, *rev'd*, 05-2477 (La. 10/17/06), 939 So.2d 1216. In *Bush,* plaintiff's claim arose prior to *LeBreton* and the plaintiff's attorney timely filed according to the jurisprudence at the time. However, the supreme court held *LeBreton* applied retroactively and the plaintiff's claim was dismissed, after trial, on an exception of prescription.

providers against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.

The first sentence of La.R.S.40:1299.47(A)(2)(a) provides that prescription is suspended for *non-qualified* health care providers until ninety days following notification by the PCF that the health care provider is not qualified. Prescription is suspended for a *qualified* health care provider until ninety-days following notice of the opinion of the medical review panel. The second sentence of this provision specifically addresses the issue of suspension of prescription for joint and solidary obligors: "The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." If the party is an alleged joint tortfeasor, prescription is suspended regardless of whether the party is qualified under the Act.[9] The filing of

---

[9] Under this provision, if the plaintiff learns the health care provider is not qualified, relies solely on the joint tortfeasor theory and fails to file in district court within ninety days of notification of the non-qualified status, his claim may be barred if the qualified health care provider is dismissed on a summary judgment. Such was the case in *Williams v. Northgate Hospital*, 98-1477 (La.App. 3 Cir. 5/5/99), 734 So.2d 1251, *writ denied,* 99-1588 (La. 9/17/99), 747 So.2d 565. In *Williams*, the alleged act of malpractice occurred on April 3, 1994. On July 24, 1994, within a year, the plaintiff filed a malpractice complaint with the medical review panel against the physician (qualified) and the hospital (non-qualified). The plaintiff was notified by the PCF, on August 2, 1994, that the hospital was not qualified under the Act. The plaintiff did not file in district court within ninety days as required under the Act but waited until after the medical review panel decision was rendered regarding the qualified physician. The physician was dismissed on a motion for summary judgment and the hospital filed an exception of prescription. In dismissing the plaintiff's suit against the hospital, this court held "so long as suit is timely filed as to the qualified defendant, it will be timely filed as to the non-qualified defendant *if* they are joint or solidary obligors." *Id.* at 1252. The result may have been different had the plaintiff filed within 90 days of notification of the non-qualified status or the qualified physician joint tortfeasor not been dismissed from the suit.

a request for review triggers suspension of prescription in a malpractice suit against all tortfeasors, qualified or non-qualified, during the pendency of the panel proceeding.

Subsequent jurisprudence applying the principles of *LeBreton* to joint tortfeasors situations have concluded that the specific provisions in the medical malpractice statute regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general codal articles on interruption of prescription against joint tortfeasors found in La.Civ.Code art. 2324(C).

In *Richard v. Tenet Health Systems, Inc.*, 03-1933 (La.App. 4 Cir. 4/14/04), 871 So.2d 671, *writ denied*, 04-1521 (La. 10/29/04), 885 So.2d 587, the Fourth Circuit addressed the issue of whether a timely filed district court suit against one health care provider interrupted prescription as to other health care providers, not previously named in the panel request, who were alleged to be jointly liable with the named defendants. In *Richard*, the plaintiff filed a timely request for a medical review panel against Mercy Hospital, Dr. Albright, Landry-Albright Radiology Group, and Dr. Bonin. After rendition of the panel decision, the plaintiff filed a timely district court suit against those defendants. Several years later, the plaintiffs filed a request for a medical review panel against additional health care providers (Drs. Smith, Glade and Villien), alleged to be joint tortfeasors, who were not previously named in the panel request. Drs. Glade, Villien and Smith filed an exception of prescription. The Fourth Circuit found suit was barred. The court applied the principles articulated in *LeBreton* and concluded the specific provisions of the medical malpractice statute rather than the general codal articles on interruption of prescription applied to determine whether a district court suit filed against one health care provider interrupted prescription as to all health care providers alleged to be jointly liable. The appellate court found

11

"*LeBreton* and the cases following it recognize that the legislature has established special rules for prescription under the Medical Malpractice Act. Consequently, the general rules of prescription do not apply." *Id.* at 673. The court held the initial request for a medical review panel suspended prescription as to Drs. Glade, Villien and Smith, as joint tortfeasors. However, under the specific provisions of La.R.S. 40:1299.41(G) and La.R.S. 40:1299.47(A)(2)(a), "prescription against any alleged joint tortfeasor or solidary obligor was suspended only for 90 days following notification, by certified mail, to the claimant or his attorney of the issuance of the opinion by the medical review panel." *Id.* at 674. The court concluded, "the plaintiffs had only until 90 days after notice of the rendition of the opinion of the original medical review panel to file a complaint against any solidary obligors." *Id.* The court found the plaintiff was notified of the opinion of the medical review panel against the original defendants on September 8, 1997 but waited over five years after the opinion to name Drs. Glade, Smith and Villien. Therefore, the appellate court concluded the plaintiff's claim as to these defendants had prescribed.

In *Baum v. Nash*, 97-233 (La.App. 3 Cir. 10/8/97), 702 So.2d 765, this court was called to decide whether the plaintiff could add a joint tortfeasor, *within the ninety-day period,* to a district court suit. In *Baum*, the plaintiff was misdiagnosed by Dr. Nash and Northwestern State University infirmary and required to undergo two surgeries for a ruptured appendix. The plaintiff filed a timely request for a medical review panel against Dr. Nash. Northwestern State University infirmary was not named in the request. Notification of the medical review panel opinion was received by the plaintiff and shortly thereafter, plaintiff filed a timely suit in district court against Dr. Nash. On June 10, 1996, within ninety days of the panel decision, the plaintiff filed an amending petition adding Northwestern State University infirmary to the district court suit. Northwestern filed an exception of prescription, citing

12

La.R.S. 9:5628, and alleging that the plaintiff failed to timely request a medical review panel. The trial court sustained the exception and this court reversed, stating:

> Under the clear language of the statute, we find that the filing of a claim with the medical review panel suspends prescription with regard to non-named solidary obligors to the same extent that it is suspended for those named in the request by the panel. There are two different periods of suspension provided for in La.R.S. 40:1299.47(A)(2)(a) of the Private Act. The first being ninety days following notification of the opinion of the medical review panel for qualified health care providers under the *private act*, and the second being sixty days following notification that the health care provider is not covered by the Private Act.
>
> In the instant case, prescription against the named defendant, Dr. Zev Nash, a qualified health care provider, was suspended until ninety days following notification of the medical review panel's opinion, which was rendered on March 25, 1996. Notification of the panel's decision was not received by Baum until April 25, 1996. Plaintiff's original petition for damages against Dr. Zev David Nash was filed on May 16, 1996, and a First Supplemental and Amending Petition for Damages adding Northwestern State University on June 10, 1996. Accordingly, plaintiff's claim against Northwestern did not prescribe as plaintiff had ninety days from April 25, 1996, to file suit against non-named solidary obligors.

*Baum,* 702 So.2d at 768.

Plaintiffs cite *Schulingkamp v. Ochsner Clinic*, 01-1137 (La.App. 5 Cir. 3/13/02), 813 So.2d 524, to support their position that this issue has not been squarely decided by the supreme court. In *Schulingkamp*, the plaintiffs filed suit in 1989 against several defendants including Ochsner Clinic. Ochsner filed an exception of prematurity and suit was dismissed without prejudice by consent judgment. The suit against the other defendants was still pending. During the pendency of the suit, but eleven years later, the plaintiff filed a request for a medical review panel to review the claim against Ochsner. The appellate court found the premature district court suit did not interrupt prescription as to Ochsner because "a prerequisite to the interruption of prescription requires that a panel has been convened to review the plaintiffs' claim." *Id.* at 528. The appellate court stated:

> In this case, as in *LeBreton*, there are two statutes dealing with

13

essentially the same subject matter. Plaintiffs argue, pursuant to La.C.C. art. 3463, that prescription against Ochsner was interrupted for as long as the suit against the remaining obligors was pending. However, to follow 3463, as plaintiffs suggest, is to ignore the statute more specifically directed at the prescription issue in the context of [the] Medical Malpractice Act, which states that plaintiff must first convene a medical review panel in order to stop the running of prescription. Based upon the reasoning of *LeBreton, supra,* we therefore find the controlling provision for the issue at hand to be contained in the Medical Malpractice Act.

*Id*. at 528-29.

The supreme court granted writs to resolve an apparent conflict in the circuits as to whether, at any time during the pendency of an action against a joint tortfeasor, the plaintiff may file a request for a medical review panel against other tortfeasors alleged to be jointly liable. However, in *Schulingkamp* the order granting the writ was recalled. In a *per curiam* opinion, the supreme court stated:

On application of the plaintiffs, we granted writs in this case intending to address an issue resolved differently by two appellate courts. That issue was whether a medical malpractice plaintiff may file a request for a medical review panel at any time during the pendency of a suit against tort defendants who were alleged to be solidarily liable with the medical malpractice defendants against whom the request is filed. . . .

Our review of the record in this case revealed however, that no express allegation of solidary liability has been asserted by the plaintiffs. Moreover, the dramatic differences between the plaintiffs' allegations concerning the medical malpractice defendant and their allegations concerning the only defendant remaining in the case at the time the request for medical review panel was filed, preclude any legal finding of solidarity between the two defendants. Thus the question we anticipated addressing is not posed in this case.

*Schulingkamp,* 02-1537 (La. 2/25/03), 838 So.2d 1289.

The Plaintiffs also rely on the Second Circuit case of *Coleman v. Acromed Corporation*, 32,590 (La.App. 2 Cir. 12/15/99), 764 So.2d 81, *writ denied*, 00-0422 (La. 3/31/00), 759 So.2d 73, which held *LeBreton* inapplicable. In *Coleman,* on June 17, 1992, the plaintiff underwent cervical and lumbar surgeries at Doctors' Hospital of Shreveport. Dr. Warren Long performed the procedure inserting a surgical device which was designed by Dr. Arthur Steffee and manufactured by Acromed Corporation.

14

On May 25, 1995, the plaintiffs filed a request for a medical review panel naming the hospital and Dr. Long as defendants. On June 12, 1995, the plaintiffs filed suit in district court against Acromed Corporation, as manufacturer, and Dr. Arthur Steffee, as designer, of a surgical implement. On September 17, 1997, the medical review panel rendered an opinion. On June 8, 1998, well beyond the ninety days, the plaintiff filed an amended petition naming the hospital and Dr. Long as defendants in the original suit. The hospital filed an exception of prescription alleging the plaintiffs' claim had prescribed ninety days from receipt of the medical review panel opinion. The plaintiffs argued that a timely-filed suit pending against one solidary obligor continues the interruption of prescription as to all solidarly obligors. The appellate court found the original defendants were not health care providers and not subject to the requirements of the medical malpractice act. Suit as to those defendants was timely and served to interrupt prescription as to all other solidary obligors, even health care providers. The appellate court distinguished *LeBreton* "because the initial suit filed here by Plaintiffs was in products liability, which was valid, timely and not premature, making it a viable interruption of prescription." *Id.* at 84.

Plaintiffs argue the supreme court has not directly considered the precise issue in this case, and they argue *LeBreton* should not be extended to reach this species of case for two reasons: first, it would foster unnecessary litigation by forcing a plaintiff to name all parties in a lawsuit prior to full discovery; and, second, it is unfair to apply the holding in this case because this was not the understanding of the practicing bar at the time this suit was instituted and there were no cases indicating that suit against one joint tortfeasor would not interrupt prescription against all.

Plaintiffs argue they did not "discover" that Dr. Young may have been negligent until February 17, 2005, during the deposition of Dr. Falterman. However, unlike the facts in *Richard,* Dr. Young was not an unknown or unnamed party. Plaintiffs named

15

Dr. Young in a request for a medical review panel alleging he breached the standard of care in the treatment of Mrs. Borel. Moreover, on April 24, 2002, when LGMC answered the Plaintiffs' petition asserting "the comparative negligence and/or fault of third parties not made defendants" in the case, Plaintiffs were again alerted LGMC was asserting others were negligent in the treatment of Mrs. Borel. As Defendants point out, the Plaintiffs still had considerable time under the statute (until January 29, 2003) within which to bring Dr. Young into the suit. However, suit against Dr. Young was not filed until March 15, 2005, more than three years after suit was filed against the hospital.[10]

The Plaintiffs argue to apply the reasoning of *LeBreton* to the facts in this case would be inequitable because this was not the understanding of the practicing bar at the time this suit was instituted and because there were no cases indicating suit against one joint tortfeasor would not interrupt prescription against all. While we find Plaintiffs' argument persuasive, we are compelled to follow the holding in *LeBreton*, regardless of the result. *See Bush v. National Health Care of Leesville, et al.*, 05-337, (La.App. 3 Cir. 11/2/03), 923 So.2d 150, *rev'd*, 05-2477 (La. 10/17/06), 939 So.2d 1216.[11]

We conclude suit against Dr. Young is barred by prescription. The alleged

---

[10] Applying La.Civ.Code art. 2324(C), as Plaintiffs suggest, subjects the health care provider to an indefinite period of prescription even after the claim has been evaluated by a medical review panel. Once a panel decision is rendered, suspension ends and the plaintiff has 90 days or the remainder of the year to name a joint tortfeasor. It can be argued with regard to an unknown joint tortfeasor, a plaintiff is allowed the remainder of the three years to "discover" the name of the party who may have caused him harm. However, even applying this argument in the present case does not assist Plaintiffs. The Plaintiffs were notified of the panel decision on January 22, 2002. The remainder of the one year prescriptive period ended on January 29, 2003. Even assuming the Plaintiffs had two additional years to "discover" a joint tortfeasor (or until January 29, 2005), suit against Dr. Young was not filed until March 15, 2005.

[11] The inequity of overruling prior jurisprudence on which litigants relied was addressed in *Bush*. The supreme court found "the equity of placing all litigants on the same footing outweighed any inequity to those plaintiffs whose suits might have been prescribed due to their failure to follow proper procedures." *Bush*, 939 So.2d at 1221.

malpractice occurred on May 23, 2000 and a timely medical review panel proceeding was filed against Dr. Young and LGMC, joint tortfeasors, on August 14, 2000. The medical review panel proceedings extended for a period of two years following the alleged date of the malpractice. During the pendency of the proceedings, the prescription was suspended. The Plaintiffs were notified of the medical review panel decision on January 22, 2002. Accordingly, we find under La.R.S. 40:1299.47(A)(2)(a), Plaintiffs had until January 29, 2003, to bring Dr. Young, who had been previously named in the medical review panel, into the suit. Their attempt to bring him into the suit on March 15, 2005 was well beyond the time period designated by the statute.

**DECREE**

Based on the foregoing review of the record, we affirm the judgment of the district court dismissing the Plaintiffs claims against Dr. Clinton Young and LAMMICO on an Exception of Prescription.

**AFFIRMED.**