STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-225

MAY YEN, ET AL.

VERSUS

AVOYELLES PARISH POLICE JURY, ET AL.

************

ON REMAND FROM THE SUPREME COURT
ON SUPERVISORY WRIT FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2002-4312
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

SHANNON J. GREMILLION
JUDGE

************

Court composed of Michael G. Sullivan, James T. Genovese, and Shannon J. Gremillion, Judges.

AFFIRMED.

Richard J. Guidry
Jeffrey A. Mitchell
The Cochran Firm New Orleans
909 Poydras St., Suite 1580
New Orleans, LA 70112
(504) 588-1580
Counsel for Plaintiff/Respondents:
    May Yen
    Lenard Moten
    Lentrell Moten
    Chantell Moten
    Elijah Yen
    Lainee Yen

**James D. "Buddy" Caldwell**
**Attorney General**
**P.O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6000**
**Counsel for Defendant/Applicant:**
    **State of Louisiana, through LSU Medical Ctr. Health Care Serv. Div.**

**Robert L. Bussey**
**Mary Lauve Doggett**
**Bussey & Lauve**
**P.O. Box 307**
**Alexandria, La 71309-0307**
**(318) 449-1937**
**Counsel for Defendant/Applicant:**
    **State of Louisiana, through LSU Medical Ctr. Health Care Serv. Div.**
    **Huey P. Long Medical Center**
    **State of Louisiana, through LSU Medical Ctr. Health Care Serv. Div.**

**John Albert Ellis**
**Louisiana Dept. of Justice**
**P.O. Box 1710**
**Alexandria, LA 71309**
**(318) 487-5944**
**Counsel for Defendant/Respondent:**
    **State of Louisiana, Dept. of Public Safety & Corrections**
    **Avoyelles Correctional Center**

**GREMILLION, Judge.**

This medical malpractice action comes before the court on remand from the Louisiana Supreme Court from this court's previous ruling. *See Yen v. Avoyelles Parish Police Jury*, 07-225 (La.App. 3 Cir. 12/5/07), 971 So.2d 536. In our original ruling, we granted writ and made it peremptory, holding that the trial court erred in denying the peremptory exception of prescription filed by the State of Louisiana, through the LSU Medical Care Services Division d/b/a Huey P. Long Medical Center (HPL). For the following reasons, the trial court's ruling is affirmed.

## FACTS

On December 27, 2001, Leonard Robinson, an inmate at the Avoyelles Correctional Center, suffered a sickle cell anemia crisis and was taken to HPL, where he died on December 28, 2001. Plaintiffs, May Yen and Chantell Moten, mothers of Robinson's children and heirs, filed a request for a medical review panel against HPL on December 22, 2002. They also filed a suit against the state through the Department of Public Safety and Corrections (DPSC), the administrator of the Avoyelles Correctional Center, and the Avoyelles Parish Police Jury. The request for a medical review panel and the suit both sounded in tort alleging medical malpractice.

In the suit, the state filed an exception of prematurity, asserting that plaintiffs, who are not themselves prisoners but rather were suing in a representative capacity, were required to pursue their claims before a medical review panel convened pursuant to the Medical Liability for State Service Act (MLSSA), La.R.S. 40:1299.39, et seq. The trial court denied the exception. The state appealed, and we affirmed, holding that the MLSSA exempted prisoners, as well as those pursuing claims as heirs of prisoners, from filing requests for medical review panels. *See Yen v. Avoyelles Parish*

1

*Police Jury,* 03-603 (La.App. 3 Cir. 11/5/03), 858 So.2d 786. This ruling was based

on the MLSSA's definition of "patient," La.R.S. 40:1299.39(A)(3), as:

> [A] natural person who receives, or should have received, health care
> from a person covered by this Part and any other natural person or
> persons who would or may have a claim or claims for damages under
> applicable law arising out of, or directly related to, the claim or claims
> of the natural person who receives, or should have received, health care
> from a person covered by this Part.

Because patients who are prisoners are exempted from proceeding before a medical

review panel, the heirs are likewise exempted.

The proceeding before the medical review panel against HPL continued until

our ruling regarding the panel proceeding against DPSC. Following that ruling, the

state filed a motion to strike the panel and exceptions of no cause of action, no right

of action, lack of subject matter jurisdiction and prematurity, or alternatively a motion

for summary judgment. The trial court granted the motion to strike the panel on

January 10, 2005.

On March 9, 2005, plaintiffs amended the suit against DPSC to add HPL as a

defendant. HPL then filed an exception of prescription. The trial court denied the

exception, holding that the suit against DPSC interrupted prescription against HPL.

We granted writs and reversed. *Yen*, 971 So.2d 536. Plaintiffs sought review

from the supreme court, which remanded the matter in light of *Borel v. Young*, 07-419

(La. 11/27/07), 989 So.2d 42.

## ANALYSIS

*The* Borel *decision:* Prior to *Borel*, a consistent line of cases, beginning with

*Hebert v. Doctors Memorial Hospital*, 486 So.2d 717 (La.1986), held that the

limitation on pursuing a medical malpractice case set forth in La.R.S. 9:5628 was

prescriptive in nature. In *Borel*, the court was faced with a claim against several

2

health care providers, all of whom were "qualified" for purposes of the Medical Malpractice Act (MMA), La.R.S. 40:1299.41, et seq., governing malpractice involving private health care providers. Following the medical review panel's opinion, plaintiffs filed suit against the hospital alone. Plaintiffs later sought to amend their petition to assert the negligence of one of the doctors, but the district court denied the amendment. Plaintiffs then filed a separate lawsuit against the doctor, which was consolidated with the suit against the hospital. That petition was filed 79 months after the date of the alleged malpractice.

The doctor filed an exception of prescription, to which plaintiffs responded that the filing of suit against the hospital interrupted prescription. The district court maintained the exception, and this court affirmed. *See Borel v. Young*, 06-352, 06-353 (La.App. 3 Cir. 12/29/06), 947 So.2d 824. The district court had reasoned that the limitation period of La.R.S. 9:5628 was peremptive and, therefore, not subject to interruption. We based our decision, though, upon *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1226, which held that the more specific provisions of the MMA applied to the exclusion of the Louisiana Civil Code's provisions regarding the interruption of prescription by filing suit against alleged joint tortfeasors found in La.Civ.Code art. 2324(C). The claim was thus prescribed.

The supreme court originally held that the provisions of §5628 were peremptive and affirmed. That decision was handed down on November 27, 2007. Subsequently, the *Borel* plaintiffs requested and were granted rehearing. On rehearing, the supreme court held that §5628 was not peremptive, but prescriptive. It further held that the prescriptive period was not subject to interruption, but only to suspension.

3

*Prescription versus peremption:* Had the original decision in *Borel* remained the ruling of the supreme court, the decision would have been momentous. Real consequences flow from the distinction between prescription and peremption. Liberative prescription is defined in La.Civ.Code art. 3447 as "a mode of barring of actions as a result of inaction for a period of time." Peremption, on the other hand, "is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La.Civ.Code art. 3458. In other words, prescription sets a time limit within which one is allowed to seek enforcement of a right; peremption completely does away with the right. Prescription under the Civil Code may be suspended, or interrupted by the filing of suit against a solidary obligor or a joint tortfeasor or by acknowledgment of the obligee's right, per La.Civ.Code art. 3464. Peremption is not subject to suspension or interruption. La.Civ.Code art. 3461. Prescription, once it has tolled, can be renounced. La.Civ.Code art. 3449. Peremption cannot be renounced. La.Civ.Code art. 3461.

The supreme court in *Borel* noted that classifying §5628 as a peremptive statute is to place it at odds with the MMA's provision suspending the tolling of the period during the pendency of the review panel proceeding. La.R.S. 40:1299.47(A)(2). This was further indication that §5628 is prescriptive and not peremptive.

Section 5628 then stands as a "hybrid prescriptive statute which expressly limits application of the discovery rule in an action for medical malpractice to a maximum of three years. . ." *Borel*, 07-0419, 18-19, 989 So.2d 42, 63. Otherwise, as the court noted in footnote 9, the result could be cases that become perempted before the medical review panel process has run its course.

4

*Comparison of MMA and MLSSA provisions:* The *Borel* case arose under the Medical Malpractice Act, whereas the present matter arises under the MLSSA. We see no distinction in the statutes, other than the exemption of prisoners from the review panel process. Indeed, the two suspension provisions are virtually identical, save that a panel convened under the MLSSA is referred to as a "state medical review panel." They even bear the same subsection numbering: (A)(2)(a) and (c). Therefore, the jurisprudence interpreting the suspension provisions of the MMA also applies to the MLSSA.

Further indication that the Civil Code's provisions do not apply to MLSSA actions is found in La.R.S.40:1299.39(C), which provides:

> Since the Louisiana Civil Code was enacted only in the domain of the private law, governs only the legal relationships of private persons among themselves alone, and is inapplicable to public entities and their legal relationships, there is no right nor legal basis ex delicto, or ex quasi-delicto, for an action by a patient or his representative to recover damages or any other losses, including those for the death of the patient, from the state or a state health care provider as defined in this Section as a result of malpractice in connection with state-provided or state-related health care; however, a patient, his representative properly acting for him, or his after-death representative shall have a right to recover from the state certain losses to the extent and within the limitations defined and allowed by this Section of public law due to malpractice as defined in this Section, in the circumstances and within the parameters provided by this Section, on the sole basis of this Section as a special substantive sui generis statutory grant in the domain of public law. This Section shall not be construed to limit, waive, or prohibit claims for lack of informed consent or breach of contract as defined by statutes or otherwise provided by law.

This is a clear expression by the Legislature that actions against the state are governed solely by the provisions of the MLSSA.

*Application of MLSSA:* What does create a clear distinction between the MLSSA and the MMA in the present matter is the exemption of prisoners from the review panel process in actions under the MLSSA. Originally, prisoners were

exempted from this requirement because their claims were subject to review under the Correctional Administrative Remedy Procedure (CARP), La.R.S. 15:1171, et seq. La.R.S. 40:1299.39(E)(1). However, the Louisiana Supreme Court in *Pope v. State*, 99-2559 (La. 6/29/01), 792 So.2d 713, held that CARP violated the state constitution, specifically Art. 5, §16, insofar as it divested district courts of their original jurisdiction over tort claims. The Legislature has not corrected what appears to the court as a paradox: ordinary citizens claiming malpractice against a state agency are required to follow the review panel process, while prison inmates are exempt from any such procedure.

To further complicate the task, while plaintiffs were pursuing medical malpractice claims against two separate agencies of the state, DPSC and HPL, they requested a review panel against HPL but opposed DPSC's attempts to require a panel. Plaintiffs were not alone in this contradiction. The state fought for a panel to review the claim against DPSC on the one hand and, on the other, succeeded in striking the panel convened to consider the claim against HPL. A state medical review panel was not allowed by this court; yet the state did not move to strike the HPL panel until well after that decision, and plaintiffs did not attempt to amend their petition with any more deliberate speed. *See Yen*, 858 So.2d 786. What remains is that a panel was convened and subsequently dismissed. How or why this happened is not relevant to our analysis. When this happened is critical.

*Rules of statutory construction:* Law in Louisiana is created either through legislation or custom. La.Civ.Code art. 1. When a law is clear and unambiguous and its application does not lead to absurd consequences, courts are bound to apply them as written without resort to determining the legislative intent. La.Civ.Code art. 9,

6

La.R.S. 1:4. Words and phrases are to be accorded their common usages, except for technical terms, which are to be accorded their peculiar and appropriate meanings. La.R.S. 1:3.

The court in this matter, then, is bound by the expression of law of the legislature in enacting the MLSSA. Unless the application of the MLSSA leads to absurd consequences, we are not allowed to search for the legislative intent.

*Analysis:* Medical malpractice claims by prisoners are subject to the prescriptive period of La.R.S. 9:5628 to the same extent as any other medical malpractice claim. When asserting medical malpractice against a state health care provider, those prisoner claims are governed by the MLSSA. They are exempted, though, from pursuing their claims before a state medical review panel. Because medical malpractice claims are tort claims, the provisions of the MLSSA requiring prisoners to submit their claims for administrative review under CARP do not apply. La.R.S. 40:1299.39(E)(1). We find it persuasive, however, that although it does not apply to the case because of the supreme court's *Pope* decision, CARP also provides for the suspension of prescription during the pendency of a prisoner's complaint or grievance. La.R.S. 15:1172(E). The MLSSA provides that the formation of a state medical review panel triggers the suspension of prescription. La.R.S. 40:1299.39.1(A)(2)(a).

If the provisions of the MLSSA govern all claims of medical malpractice against the state, including claims of prisoners—and it clearly does govern all such claims—we are bound to apply the MLSSA. That is the import of *Borel*, on which we rely pursuant to our instructions from the supreme court. Here, a review panel was convened. Under the plain wording of La.R.S. 40:1299.39.1(A)(2)(a), that

7

suspended prescription. The trial court's order striking the panel was rendered on January 10, 2005.

Suspension continues for 90 days following the notification of an opinion or the dissolution or dismissal of the panel. La.R.S. 40:1299.39.1(A)(2)(a) & (c), and La.R.S. 40:1299.39.1(B)(3). The 90th day was April 10, 2005. Because the death occurred on December 28, 2001, and prescription was suspended by the convening of the panel on December 22, 2002, six days remained on the one-year prescriptive period. Prescription would have tolled on April 16, 2005. That date fell on a Saturday. Plaintiffs had, then, until April 18, 2005 to file suit against HPL. La.R.S. 1:5 and La.Civ.Code art. 3454. The parties agree that plaintiffs amended their petition to name HPL on March 9, 2005. That amendment, then, was timely filed. Plaintiffs' claims against HPL were not prescribed.

## CONCLUSION

Despite a prisoner's exemption from proceeding before a state medical review panel, his claims are otherwise governed in every respect by the MLSSA. So are the claims pursued by the heirs of prisoners. That includes the provisions regarding prescription. The court is bound to apply the MLSSA as written unless its application would lead to absurd consequences.

Prescription in all medical malpractice actions is governed solely by the provisions of the MMA or the MLSSA. Therefore, there is no interruption of prescription in medical malpractice cases. Suspension in such cases is only available when a medical review panel is convened. That suspension continues until 90 days after the panel is dismissed or renders a decision that is delivered to the parties. In the present matter, both the state and plaintiffs were simultaneously opposing and

8

pursuing proceedings before state medical review panels. We find it dispositive of the exception of prescription that a panel was in fact convened regardless of whether the convention was later found to be improper. The dismissal of the panel triggered the 96-day countdown within which plaintiffs were required to file suit against HPL. The amendment of the original suit was filed within the 96-day period. Therefore, plaintiffs' claims were preserved. The judgment of trial court denying the exception of prescription is affirmed.

**AFFIRMED.**